Wolfgang MAU and Ena Mau, Plaintiffs-Appellants,

v.

NORTH DAKOTA INSURANCE RESERVE FUND, a corporation, Defendant,

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, a corporation, Defendant-Appellee.

Supreme Court

*No. 00–1369–CQ. Oral argument September 13, 2001.—Decided December 21, 2001.*

2001 WI 134

(Also reported in 637 N.W.2d 45.)

1033

For the plaintiffs-appellants there were briefs by *Duane A. Lillehaug* and *Lee Hagen Law Office, Ltd.*, Fargo, North Dakota, and *Dana J. Weis* and *Habush, Habush, Davis & Rottier,* Rhinelander, and oral argument by *Dana J. Weis.*

For the defendant-appellee there was a brief by *William P. Harrie* and *Nilles, Hansen & Davies, Ltd.*, Fargo, North Dakota, and *Frank L. Steeves, Patrick L. Wells* and *Crivello, Carlson, Mentkowski & Steeves, S.C.,* Milwaukee, and oral argument by *Patrick L. Wells.*

¶ 1. N. PATRICK CROOKS, J. This case is before the court on certification from the Supreme Court of North Dakota pursuant to Wis. Stat. § 821.01 (1995–96).[1] The parties dispute whether Wolfgang Mau is covered under an underinsured motorist policy. The specific question before the court is: Is Endorsement #1 in the International Extended Protection (IEP) Option valid under Wisconsin law to preclude underinsured motorist coverage to one who rents a car from Alamo, purchases the IEP Option, and is injured while

---

[1] All subsequent references to the Wisconsin Statutes are to the 1995–1996 version unless otherwise indicated.

sitting in a different car? Based on our interpretation of language in the excess policy, we find that Mau is a named insured under the excess policy and that the occupancy requirement in Endorsement #1 is not valid under Wis. Stat. § 632.32.

I

¶ 2. The facts in this case are not in dispute. Wolfgang Mau and Dieter Jung (Jung), residents of Germany, arranged with a German travel agent to rent a car from Alamo Rent-A-Car, Inc. (Alamo) in Milwaukee, Wisconsin, for three weeks. Wolfgang Mau and Jung arrived in Milwaukee on April 4, 1997, and rented the car from Alamo. The rental voucher specifically names "Mr. Mau/Wolfgang" as "Renter" and Wolfgang Mau signed the rental documents on the line indicated "Renters' Signature." After renting the car from Alamo, Wolfgang Mau and Jung began traveling west across the United States.

¶ 3. On April 5, 1997, due to slippery road conditions, Wolfgang Mau lost control of the rental car on I-94 near Casselton, North Dakota. The rental car slid off the road and came to rest with its front wheels over the shoulder.

¶ 4. A Cass County deputy sheriff arrived at the scene and parked his squad car on the shoulder of the road, about thirty feet from the rental car. The deputy asked Wolfgang Mau and Jung to get into his patrol vehicle as he was helping them make arrangements to get the rental car pulled out. Jung sat in the front seat of the patrol car and Wolfgang Mau sat in the rear seat of the patrol car.

¶ 5. Shortly thereafter, Bette Mashburn (Mashburn) was heading east on I-94 and lost control of her vehicle. Mashburn's vehicle struck the patrol car, pin-

ning Mau up against the security barrier between the front and rear seats of the patrol car. Wolfgang Mau suffered serious injuries.

¶ 6. Wolfgang Mau and his wife, Ena Mau, (hereafter collectively referred to as "Mau") settled the liability claim against Mashburn for her insurance policy limit of $100,000. Mau then sued the North Dakota Insurance Reserve Fund ("NDIRF"), which insured the patrol car, and National Union Fire Insurance Company of Pittsburgh (National Union), Alamo's insurer. The NDIRF coverage had underinsured motorist (UIM) policy limits of $1,000,000. Mau settled his claim against NDIRF for $715,000. The certified question in this case relates to Mau's continued claim for UIM coverage against National Union.

¶ 7. Information about Mau's insurance coverage was provided in the rental documents he received from Alamo, and in policies issued to Alamo by National Union. The Alamo rental voucher states:

THE FOLLOWING PRODUCTS, AS DESCRIBED IN THE RENTAL JACKET, ARE INCLUDED:

. . . .

- EP WITH BODILY INJURY LIABILITY LIMIT AND UM LIMIT OF 1 MILLION

¶ 8. Under "TERMS FOR RENTING AN ALAMO CAR," the rental agreement provided:

Other Options: . . . Extended Protection (EP), . . . and other such options are offered where permitted and are described and limited on the rental agreement jacket that I received from you and in any underlying policy.

The rental agreement jacket provided:

This is your Rental Agreement Jacket which contains important information about options you may purchase. The benefits are only as described in this Rental Agreement Jacket and in any underlying insurance policy covering the rental and are subject to the express terms and conditions of your Rental Agreement. Alamo offers no "full coverage" option.

. . .

LIABILITY INSURANCE SUPPLEMENT (LIS)

If LIS is purchased, you and authorized drivers are provided up to an aggregate single limit of $500,000 for claims that may be made by others against you or authorized drivers for bodily injury or death and/or property damage arising out of the use or operation of our rental car. . . .

UNINSURED MOTORIST (UM)

UM provides benefits to you and any family members up to an aggregate single limit of $100,000. These benefits are provided to you or any family member who, while physically occupying the Alamo rental car when it is being driven by you or an authorized driver, suffers bodily injury or death by a negligent motorist, a negligent underinsured motorist or a negligent hit and run driver.

EXTENDED PROTECTION (EP)

If purchased, EP provides . . . UM protection as described above. EP does not include any additional UM coverage above $100,000, except to the extent, if any, required by state law, and you and Alamo reject such additional UM coverage to the extent permitted by law.

. . .

1039

> The purchase of EP, LIS, and UM is entirely optional; no purchase is required in order to rent our car. The purchase is not an application for insurance. Alamo's policy is issued by National Fire Ins. Co. of Pittsburgh, PA ("National Union").

(Emphasis in original.)

¶ 9. Mau was covered under two policies in relation to the Alamo rental car: RMCA 1432406, the "Commercial Auto" policy ("the underlying policy"); and RMCA 1432440, an "Excess Auto Liability (IEP)" policy ("the excess policy"). Coverage under the excess policy was available to Mau because he purchased the International Extended Protection (IEP) Option.

¶ 10. The declarations page of the excess auto policy provides: "[T]his policy shall follow all the terms and conditions of Policy Number <u>RMCA 1432440</u> . . . . NAMED INSURED: SEE ENDORSE-MENT #1." Endorsement #1 states:

> It is agreed Section II -- LIABILITY COVERAGE, A. COVERAGE, 1. WHO IS AN INSURED of the Business Auto Coverage Form is amended to read:
>
> 1. Who Is An Insured
>
> a. Only while occupying the Alamo rental vehicle, any rentee/lesee [*sic*] who purchases the International Extended Protection (IEP) Option, but only while the Alamo vehicle is being driven by the rentee/lessee or an "Alamo Authorized Additional Driver" and all terms and conditions of the Rental Agreement have been met.
>
> . . .

¶ 11. Mau's claim against National Union is based on the underinsured motorist coverage provided by the excess policy. Mau had underinsured motorist coverage

because, under the IEP Option, he was entitled to benefits for "bodily injury or death by . . . a negligent underinsured motorist."

## II

¶ 12. The Supreme Court of North Dakota asks this court to decide whether specific provisions of the excess policy are valid under Wisconsin law. Our understanding of the Supreme Court of North Dakota's certified question is whether, under Wisconsin law, an underinsured motorist policy can define a named insured by requiring occupancy of a specific vehicle. It is unclear, however, whether the Supreme Court of North Dakota is asking this court to assume that Mau is a named insured under the excess policy,[2] or if the Supreme Court of North Dakota is asking this court to interpret the contract and decide if Mau is a named insured. To answer the certified question, therefore, we find that we must first decide whether Mau is a named insured by interpreting specific provisions of the excess policy. The interpretation of language in an insurance policy presents a question of law that we review de novo.[3] *Smith v. Atlantic Mut. Ins. Co.,* 155 Wis. 2d 808, 810, 456 N.W.2d 597 (1990).

¶ 13. We apply the same rules of construction to the language in an insurance policy as to the language

---

[2] "Relying on the declarations page and Endorsement #1 to the National Union excess policy, it may be argued Mau is a named insured under Wis. Stat. § 632.32(6)(b)(2)." *Mau v. N.D. Ins. Reserve Fund,* 610 N.W.2d 761, 766 (N.D. 2000).

[3] We recognize that, in the context of this case, we are not reviewing the interpretation of a lower court. We simply note, however, that the standard of review is the same.

in any other contract. *Taylor v. Greatway Ins. Co.*, 2001 WI 93, ¶ 10, 245 Wis. 2d 134, 628 N.W.2d 916; *Kremers-Urban Co. v. Am. Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984). The objective in interpreting and construing a contract is to carry out the true intention of the parties. *Kremers-Urban,* 119 Wis. 2d at 735. The language of an insurance policy is ambiguous when it is "susceptible to more than one reasonable construction." *Smith,* 155 Wis. 2d at 811. Whether ambiguity exists in a contract is a question of law. *Kremers-Urban,* 119 Wis. 2d at 735. We construe ambiguities in coverage in favor of the insured and narrowly construe exclusions in coverage against the insurer. *Smith,* 155 Wis. 2d at 811. The test is not what the insurer intended the words to mean, but what a reasonable person in the position of the insured would have understood the words to mean. *Dowhower v. W. Bend Mut. Ins. Co.*, 2001 WI 73, ¶ 35, 236 Wis. 2d 113, 613 N.W.2d 557. However, when the language of the policy is plain and unambiguous, we will enforce the policy as written and not engage in construction. *Danbeck v. Am. Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150.

¶ 14. The declarations page of the excess policy states, "NAMED INSURED: SEE ENDORSEMENT #1." Endorsement #1 defines "Who Is An Insured" by listing three definitions.[4] The first definition potentially includes Mau, and therefore, is the only definition at issue.

---

[4] We recognize that the heading in Endorsement #1 states, "Issued to Alamo Rent-A-Car, Inc." However, rather than relying on the heading to determine who is a named insured, we look to the substance of Endorsement #1, the definitions, to define named insured.

¶ 15. Neither Mau nor National Union argue that Endorsement #1 to the excess policy is unambiguous and plain on its face. In fact, we find the excess policy is ambiguous in defining "named insured" because the language is susceptible to more than one reasonable construction. Mau contends the language in Endorsement #1 lists three definitions for named insured under the excess policy. In the alternative, National Union argues that Endorsement #1 does not define named insured, but merely amends the definition of insured in the underlying policy.

¶ 16. We find the excess policy ambiguous because it fails to clearly convey who is a named insured. The declarations page refers to the definitions in Endorsement #1 for defining "named insured;" however, the language in Endorsement #1 refers only to "insured." Furthermore, the amending language in Endorsement #1 amends "Section II – LIABILITY COVERAGE, A. COVERAGE, 1. WHO IS AN INSURED of the Business Auto Coverage Form." The difficulty, however, is that the excess policy does not contain a section entitled "Section II – LIABILITY COVERAGE." The amending language in Endorsement #1, therefore, on its face, refers to the underlying liability policy, not the excess policy.

¶ 17. Applying the canons of interpretation for insurance contracts, as noted previously, we interpret the policy based on what a reasonable person in the position of the insured would have understood the words to mean. *Dowhower*, 2000 WI 73, ¶ 35. Mau asserts that a reasonable insured would have understood he was a named insured under the excess policy, because he affirmatively decided to buy more insurance than Alamo provided with the standard rental agree-

ment. Mau claims that by virtue of paying a fee for the excess policy, Mau is a named insured, rather than an occupancy insured. National Union argues that a reasonable insured would have understood that Mau is not a named insured, but that he is covered only as an "occupancy insured." Mau was covered under both the underlying liability policy and the excess policy, National Union contends, but only while occupying the Alamo rental car.

¶ 18. National Union makes two arguments in support of its position. First, relying on *Meyer v. City of Amery,* 185 Wis. 2d 537, 518 N.W.2d 296 (Ct. App. 1994), National Union contends that Mau is not a named insured because the definition of named insured in the underlying policy controls, and the underlying policy defines the named insured as Alamo, not Mau. Second, National Union argues that Mau did not purchase an insurance policy from Alamo. Mau's purchase of the IEP option meant only that the additional limits of the IEP option were available to Mau as an occupancy insured. We address each of these arguments in turn.

¶ 19. First, National Union argues that *Meyer* controls this case because the underlying policy unambiguously lists Alamo as the named insured. Because the excess policy was meant to follow the terms and conditions of the underlying policy, National Union contends that Mau is not a named insured under the excess policy.[5] In *Meyer,* the court of appeals denied

---

[5] The language of the declarations page of the excess policy states: "[T]his policy shall follow all the terms and conditions of Policy Number RMCA 1432440 . . . ." However, Policy Number RCMA 1432440 is the policy number of the excess policy, not the underlying policy. The language of the excess policy itself states that it provides coverage "in accordance with the applicable insuring agreements, terms, conditions and exclusions of

coverage for a police officer under a commercial fleet policy issued to the city. 185 Wis. 2d at 547. The officer was not a named insured under the policy because the policy unambiguously referred only to the city as the named insured. *Id.* at 544. The court of appeals concluded that finding the officer covered as a named insured would stretch the coverage of the commercial fleet policy and would essentially "rewrite the policy." *Id.* at 546 (quoting *Ins. Co. of N. Am. v. Perry,* 134 S.E.2d 418, 420 (Va. 1964)).

¶ 20. Justice Sykes' dissent also relies on the court of appeals decision in *Meyer,* but *Meyer* is not persuasive here because the fleet policy in *Meyer* did not involve the language of an endorsement altering the policy.[6] In this case, the declarations page of the excess policy states, "NAMED INSURED: SEE ENDORSEMENT #1." Based on this language, a reasonable insured would rely on the definitions in Endorsement #1 to define named insured under the excess policy.[7]

---

the Underlying Policy # RMCA 1432406." The UM/UIM endorsement to the excess policy provides that "this endorsement modifies insurance provided under the following: RMCA 1432406."

[6] *Meyer v. City of Amery,* 185 Wis. 2d 537, 518 N.W.2d 296 (Ct. App. 1994) is also not persuasive here because Meyer sought coverage under an underlying fleet policy naming the City of Amery as the named insured. 185 Wis. 2d at 544. In contrast, Mau is seeking coverage under an excess policy which does not identify Alamo as a named insured.

[7] We rely on the declarations page because in construing the contract, we must give meaning to all provisions in the insurance policy. *See Maas v. Ziegler,* 172 Wis. 2d 70, 80, 492 N.W.2d 621 (1992); *see also* Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* 3d (12/95), § 21:19 ("All its words, parts, and provisions must be construed together as one entire contract, each part interpreted in the light of all the other parts, in connection

¶ 21. In *Greene by Schoone v. General Casualty Co.,* 216 Wis. 2d 152, 576 N.W.2d 56 (Ct. App. 1997), the court of appeals determined the effect of an endorsement. The terms of a business auto policy were modified by an endorsement amending "WHO IS AN INSURED." 216 Wis. 2d at 158–159. The court of appeals concluded that the endorsement modified the policy to cover the persons listed in the endorsement as named additional interests. *Id.* at 159. The endorsement amended the policy language to provide coverage for the people listed in the endorsement. *Id.* Like the endorsement in *Greene,* here Endorsement #1 modified the excess policy by providing coverage to those who fall within the definitions in Endorsement #1. The plain language of the declarations page establishes that Endorsement #1 specifically defines who is a named insured. Anyone falling within the definitions in Endorsement #1, therefore, is covered as a named insured under the excess policy.

¶ 22. Second, National Union argues that although Mau purchased the IEP option, Mau was not purchasing an insurance contract covering him as a named insured. National Union contends that purchas-

with the risk or subject matter."). The declarations page is appropriately considered part of the insurance policy and accordingly, is interpreted as part of the policy. *See Brunson v. Ward,* 2001 WI 89, 245 Wis. 2d 163, 629 N.W.2d 140; *Dowhower v. W. Bend Mut. Ins. Co.,* 2000 WI 73, ¶ 40, 236 Wis. 2d 113, 613 N.W.2d 557 (Bradley, J., concurring). ("Arguably, the Declaration page is the most crucial section of the policy for the typical insured . . . "); *Petrowski v. Hawkeye-Sec. Ins. Co.,* 237 F.2d 609, 610 (7th Cir. 1956) ("All three documents, policy, declarations, and special endorsement, were stapled together and comprised one unit when issued.").

ing the IEP option means only that the additional limits of the IEP option were available to Mau as an occupancy insured.

¶ 23. To support its position, National Union relies on other cases involving rental cars. Specifically, National Union cites *Canedy v. Liberty Mutual Insurance Co.*, 126 F.3d 100, 105 (2d Cir. 1997), rejecting the proposition that a rental car customer who requests liability insurance from a rental car company is a named insured. *Canedy*, however, does not apply to the facts of this case. The court in *Canedy* was faced with policy terms completely different from the terms in the National Union excess policy[8]. Furthermore, *Canedy* focused on gratuitous coverage, not an excess policy for which the rental car customer paid an additional premium.

¶ 24. National Union also cites Wisconsin Court of Appeals cases that are likewise inapplicable. The court of appeals has addressed only limited issues relating to rental car agencies and insurance contracts. In *Classified Insurance Co. v. Budget Rent-A-Car*, 186 Wis. 2d 478, 483, 521 N.W.2d 177 (Ct. App. 1994), the court held that a rental car company, a self-insured

---

[8] In *Canedy*, the Second Circuit Court of Appeals specifically held that the rental car customer did not fall within the policy's definitions of "an insured." For purposes of UIM coverage, the policy defined "an insured" as:

1. You.
2. If you are an individual, any family member.
3. Anyone else occupying a covered auto.. . . .
4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured.

*Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 103 (2d Cir. 1997).

entity, is not statutorily required to provide or offer UM or UIM coverage under its rental agreements. *See also Prophet v. Enter. Rent-A-Car Co.*, 2000 WI App 171, ¶ 18, 238 Wis. 2d 150, 617 N.W.2d 225 (no statute requires a self-insured entity to provide uninsured motorist coverage as part of optional insurance offered customers); *Janikowski v. State Farm Mut. Auto. Ins. Co.*, 187 Wis. 2d 424, 429, 523 N.W.2d 130 (Ct. App. 1994) (out-of-state rental car agency not required to provide UM coverage). Because Mau is not claiming that Alamo was statutorily required to provide or offer UM or UIM coverage, *Classified* does not apply.

¶ 25. We reject National Union's arguments. We find that a reasonable person in the position of the insured would understand that the declarations page of the excess policy clearly instructs the reader to go to Endorsement #1 to determine who is a named insured. We now look to Endorsement #1 to determine if Mau falls within one of the definitions listed.

¶ 26. Endorsement #1 lays out three definitions for named insured. Mau falls under the first definition because the parties do not contest that Mau is a "rentee/lesee [*sic*] who purchases the International Extended (IEP) Option."[9] Mau's name was designated as "renter"[10] on the rental agreement and he signed the

---

[9] For the limited purpose of interpreting the insurance contract to determine if Mau is a named insured, we do not consider, now, the occupancy requirement. The validity of the occupancy requirement is the basis for the certified question and we consider the certified question, directly, in Part III.

[10] Mau is both the "renter" and "rentee" because the two terms have the same meaning. Black's Law Dictionary defines rentee as "A tenant." *Black's Law Dictionary* 1300 (7th ed. 1999). American Heritage Dictionary defines renter, "One who

rental documents on the line indicated, "renter's signature." It is also undisputed that Mau requested and purchased the IEP option.

¶ 27. Based on our interpretation of the excess policy, we find that Mau falls within definition 1.a. in Endorsement #1, which refers to a rentee/lessee who purchases an IEP Option, as Mau did in this case. Consequently, Mau is a named insured under the excess policy.[11] We next turn to the occupancy requirement in the definition of named insured and determine the validity of this provision under Wisconsin law.

### III

¶ 28. The Supreme Court of North Dakota specifically asks this court to determine the validity of the occupancy requirement in Endorsement #1 under Wis.

pays rent for the use of another's property; tenant." *American Heritage Dictionary* 1047 (2d College ed. 1985). It is undisputed that Mau rented the Alamo rental car; Mau is therefore, both a renter and a rentee.

[11] Justice Sykes' dissent claims that finding Mau is a named insured under the excess policy "goes beyond what the parties obviously intended" and that Mau's purchase of the excess policy merely provided him with "increased coverages." Dissent at ¶ 66. We disagree. We interpret the excess policy based on what a reasonable person in the position of the insured would understand who is a named insured. *See Dowhower v. W. Bend Mut. Ins. Co.,* 2000 WI 73, ¶ 35, 236 Wis. 2d 113, 613 N.W.2d 557. Based on the language of the declarations page, viewed by a reasonable person in the position of the insured, we conclude that Endorsement #1 to the excess policy defines named insured and Mau is a named insured because he falls within the first definition.

Stat. § 632.32.[12] Statutory interpretation is a question of law that we decide independently. *Blazekovic v. City of Milwaukee*, 2000 WI 41, ¶ 9, 234 Wis. 2d 587, 610 N.W.2d 467. The primary goal is to discern the intent of the legislature. *Id.*

¶ 29. Before we engage in statutory interpretation, we need to examine the excess policy at issue in this case, in relation to the omnibus statute, Wis. Stat. § 632.32. Mau's claim against National Union is for underinsured motorist coverage under the excess policy. Terms of the excess policy, as laid out in the Rental Agreement Jacket, provide benefits for "bodily injury or death by . . . a *negligent underinsured motorist.*" (emphasis supplied). The IEP option, therefore, provides Mau with underinsured motorist coverage.

¶ 30. To determine the validity of the occupancy requirement for underinsured motorist coverage, we look to Wis. Stat. § 632.32, which, except as otherwise provided, applies to all motor vehicle insurance policies issued or delivered in Wisconsin. *Clark v. Am. Family Mut. Ins. Co.*, 218 Wis. 2d 169, 173, 577 N.W.2d 790 (1998). Some earlier cases suggest that certain provisions of § 632.32 apply only to liability policies, not indemnity insurance.[13] *See Martin v. Milwaukee Mut. Ins. Co.*, 146 Wis. 2d 759, 770, 433 N.W.2d 1 (1988); *Peabody v. American Family Mut. Ins. Co.*, 220 Wis. 2d

---

[12] Although Endorsement #1 lists three definitions for named insured, we examine only the first, 1.a., because it relates to Mau. Regardless, the occupancy requirement is identical in all three definitions.

[13] Liability coverage "requires the insurer to shield the insured from making payment on a claim for which the insured is liable." *Blazekovic v. City of Milwaukee*, 2000 WI 41, ¶ 38, 234 Wis. 2d 587, 610 N.W.2d 467. "In contrast, uninsured motorist coverage [indemnity coverage] seeks to compensate the insured

340, 350, 582 N.W.2d 753 (Ct. App. 1998). However, the plain language of several subsections in § 632.32 demonstrate the applicability of those sections to indemnity insurance. *See* § 632.32(4) ("Required Uninsured Motorist ... Coverage[s]"); § 632.32(4m) ("Underinsured Motorist Coverage"); § 632.32(5)(g) ("uninsured or underinsured motorist coverage"); § 632.32(5)(i) ("uninsured or underinsured motorist coverage"); § 632.32(5)(j) ("any coverage"). Furthermore, this court has applied § 632.32 to indemnity insurance. *Blazekovic*, 2000 WI 41, ¶ 42 (applying § 632.32(5)(j) to uninsured motorist coverage); *see also Brunson v. Ward*, 2001 WI 89, ¶ 24, 245 Wis. 2d 163, 629 N.W.2d 140 (applying § 632.32(4m)(d) to underinsured motorist policy); *Dowhower*, 2000 WI 73, ¶ 20 (applying § 632.32(5)(i)1 to underinsured motorist coverage); *Theis v. Midwest Sec. Ins. Co.*, 2000 WI 15, ¶ 39, 232 Wis. 2d 749, 606 N.W.2d 162 (applying § 632.32(4) to uninsured motorist coverage); *Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 648, 586 N.W.2d 863 (1998) (applying § 632.32(4) to uninsured motorist coverage); *Clark v. Am. Family Mut. Ins. Co.*, 218 Wis. 2d 169, 173–175, 577 N.W.2d 790 (1998) (examining validity of territorial exclusion in uninsured motorist coverage

---

after the insured has sustained an actual loss." *Id.* Similar to uninsured motorist coverage, underinsured motorist coverage is indemnity coverage.

Here the distinction between liability and indemnity coverage does not change our conclusion as to the applicability of Wis. Stat. § 632.32. The excess policy falls within the scope of § 632.32 because it is a liability policy. Mau was covered under the excess policy because he bought the IEP Option. According to the rental jacket, "EP [Extended Protection] provides both LIS [Liability Insurance Supplement] and UM protection." The excess policy, therefore, is a liability policy with uninsured and underinsured motorist coverage.

under § 632.32(6)). The excess policy was both issued and delivered in Wisconsin; therefore, we are satisfied that it is appropriate to use the provisions in § 632.32, discussed herein, to determine the validity of the occupancy requirement for underinsured motorist coverage.

¶ 31. Since we have determined that Mau is a named insured, the issue now becomes whether defining a named insured by requiring occupancy of the Alamo vehicle is valid under Wis. Stat. § 632.32. We recognize that § 632.32 allows insurance companies to provide exclusions in automobile policies. *See* Wis. Stat. § 632.32(5)(e).[14] In *Clark,* 218 Wis. 2d at 174, this court found § 632.32(5)(e) unambiguous. "[T]he [legislative] intent is to provide that an insurance contract may include exclusions not specifically listed in Wis. Stat. § 632.32(6) or prohibited by other applicable law." *Id.*

¶ 32. To determine the validity of the occupancy requirement, we follow the established two-part test. *Blazekovic,* 2000 WI 41, ¶ 12; *Clark,* 218 Wis. 2d at 174. First, we look to Wis. Stat. § 632.32(6) and decide whether the occupancy requirement fits the description of any of the enumerated prohibitions.[15] *Clark,* 218 Wis. 2d at 174. If it does, the matter is resolved and the occupancy requirement is invalid. *Blazekovic,* 2000 WI 41, ¶ 13. If it does not, we examine any "other appli-

---

[14] Wisconsin Stat. § 632.32(5)(e) states: A policy may provide for exclusions not prohibited by sub. (6) or other applicable law. Such exclusions are effective even if incidentally to their main purpose they exclude persons, uses or coverages that could not be directly excluded under sub. (6)(b).

[15] Wisconsin Stat. § 632.32(6) provides in full:

1052

cable law" that may prohibit the provision. *Clark*, 218
Wis. 2d at 174. Absent any other applicable law prohib-

PROHIBITED PROVISIONS.

(a) No policy issued to a motor vehicle handler may exclude coverage upon any of its officers, agents or employes when any of them are using motor vehicles owned by customers doing business with the motor vehicle handler.

(b) No policy may exclude from the coverage afforded or benefits provided:

1. Persons related by blood or marriage to the insured.

2. a. Any person who is a named insured or passenger in or on the insured vehicle, with respect to bodily injury, sickness or disease, including death resulting therefrom, to that person.

b. This subdivision, as it relates to passengers, does not apply to a policy of insurance for a motorcycle as defined in s. 340.01(32) or a moped as defined in s. 340.01(29m) if the motorcycle or moped is designed to carry only one person and does not have a seat for any passenger.

3. Any person while using the motor vehicle, solely for reasons of age, if the person is of an age authorized to drive a motor vehicle.

4. Any use of the motor vehicle for unlawful purposes, or for transportation of liquor in violation of law, or while the driver is under the influence of an intoxicant or a controlled substance or controlled substance analog under ch. 961 or a combination thereof, under the influence of any other drug to a degree which renders him or her incapable of safely driving, or under the combined influence of an intoxicant and any other drug to a degree which renders him or her incapable of safely driving, or any use of the motor vehicle in a reckless manner. In this subdivision, "drug" has the meaning specified in s. 450.01(10).

(c) No policy may limit the time for giving notice of any accident or casualty covered by the policy to less than 20 days.

iting the occupancy requirement, it remains valid. *Blazekovic,* 2000 WI 41, ¶ 13.

¶ 33. Before applying the two-part test, we recognize that the occupancy requirement in the excess policy is not couched as an exclusion. Although the occupancy requirement is part of the definition of named insured, for our analysis, we treat the definition the same as an exclusion. The purpose of the occupancy requirement is to exclude coverage for persons not occupying the Alamo rental car. The occupancy requirement, therefore, produces the same result as an exclusion. "To treat the definition differently from the exclusion merely because it is couched in the definition section of the policy would be to exalt form over substance . . ." *Rodey v. Stoner,* 180 Wis. 2d 309, 313, 509 N.W.2d 316 (Ct. App. 1993).

¶ 34. Although Mau does not argue that the occupancy requirement falls within the enumerated prohibitions under Wis. Stat. § 632.32(6), we look closely at the prohibited provision in § 632.32(6)(b)2.a. Section 632.32(6)(b)2.a. prohibits an exclusion for "[a]ny person who is a named insured."[16] We have already determined that Mau is a named insured under the excess policy. The occupancy requirement, if applied to Mau will exclude coverage for Mau, a named insured. Based on our analysis, we find that the occupancy requirement violates § 632.32(6)(b)2.a., because the occupancy requirement excludes coverage for a named insured. Our inquiry, however, does not end. Mau's argument centers on the second part of the test and focuses on why the

---

[16] We do not look to or apply the phrase, "or passenger in or on the insured vehicle" in Wis. Stat. § 632.32(6)(b)2.a., because this phrase does not modify "named insured."

occupancy requirement is invalid under other applicable law. Because we choose to address Mau's arguments, our analysis continues, to determine whether, in addition to § 632.32(6)(b)2.a., other applicable law prohibits the occupancy requirement.

¶ 35. Mau argues that the occupancy requirement violates Wis. Stat. § 632.32(5)(j) because it is a breed of "drive other car" exclusion. *Blazekovic,* 2000 WI 41, ¶ 28. Section 632.32(5)(j) states:

> A policy may provide that any coverage under the policy does not apply to a loss resulting from the use of a motor vehicle that meets all of the following conditions:
>
> 1. Is owned by the named insured, or is owned by the named insured's spouse or a relative of the named insured if the spouse or relative resides in the same household as the named insured.
>
> 2. Is not described in the policy under which the claim is made.
>
> 3. Is not covered under the terms of the policy as a newly acquired or replacement motor vehicle.

¶ 36. In *Blazekovic,* 2000 WI 41, ¶¶ 15–22, this court recently applied the two-part test and examined Wis. Stat. § 632.32(5)(j) as "other applicable law" prohibiting an exclusion. In *Blazekovic,* we found an endorsement excluding coverage when the insured was using "non-owned emergency type vehicles in connection with his or her employment, occupation, or profession" invalid as a "drive other car" exclusion. *Id.* at ¶ 3. We found that § 632.32(5)(j) applies to "drive other car" exclusions in the uninsured motorist context. *Id.* at ¶ 33. Furthermore, we held that a "drive other car" exclusion is valid only if it meets all three condi-

tions listed in § 632.32(5)(j). *Id.* at ¶ 27. The first condition requires the exclusion be directed to a vehicle owned by the named insured. Wis. Stat. § 632.32(5)(j)1. Because the emergency vehicle endorsement was directed to a non-owned vehicle, the endorsement did not meet all three conditions in § 632.32(5)(j)[17] and was an invalid "drive other car" exclusion. *Id.* at ¶ 42.

¶ 37. National Union argues *Blazekovic* is not controlling because the occupancy requirement is not a "drive other car" exclusion. National Union also repeats its arguments that Mau is not a named insured because he is not the owner of the vehicle or the purchaser of the policy. We disagree. As already decided above, Mau is a named insured under the excess policy. Furthermore, the occupancy requirement, while not couched in terms of an exclusion, is a "drive other car" exclusion because it has the effect of excluding coverage for a named insured not occupying the rental vehicle.

¶ 38. Applying Wis. Stat. § 632.32(5)(j) to Endorsement #1, we find that the occupancy requirement is invalid. Limiting coverage for a named insured "only while occupying the Alamo rental vehicle" amounts to a "drive other car" exclusion. And just like the emergency vehicle exclusion in *Blazekovic,* the occupancy requirement is directed to a non-owned vehicle. The occupancy requirement, therefore, fails the first condition of § 632.32(5)(j) and is invalid because it is a "drive other car" exclusion that fails to meet all three conditions in § 632.32(5)(j).

---

[17] The second and third conditions were not at issue because the emergency vehicle exclusion failed to meet the first condition.

¶ 39. We do not address the remainder of the named insured definition in Endorsement #1 1.a., "only while the Alamo vehicle is being driven by the rentee/lessee," because the occupancy requirement makes the definition invalid under Wisconsin law.

## IV

¶ 40. We conclude that Mau is a named insured under the excess policy. Because it is unclear whether the Supreme Court of North Dakota had already decided if Mau was a named insured, we have interpreted relevant portions of the insurance contract to determine that Mau is a named insured. The declarations page and Endorsement #1 are ambiguous in defining named insured, because the policy is susceptible to more than one reasonable construction. Applying canons of interpretation, we find that the declarations page directs the reader to the definitions in Endorsement #1 to determine who is a named insured. Because it is undisputed that Mau is a "rentee/lessee who purchase[d] the . . . (IEP) Option," we hold that Mau is a named insured under Endorsement #1 to the excess policy.

¶ 41. Next, we have examined the question certified by the Supreme Court of North Dakota, specifically, the validity of the occupancy requirement. We conclude that the occupancy requirement violates both Wis. Stat. §§ 632.32(6)(b)2.a. and 632.32(5)(j). The occupancy requirement violates the prohibited provision in § 632.32(6)(b)2.a. because, if applied, the occupancy requirement excludes coverage for a named insured. The occupancy requirement also violates § 632.32(5)(j). The occupancy requirement has the same effect as a "drive other car" exclusion and, because it does not meet

1057

all three conditions of § 632.32(5)(j), the occupancy requirement is invalid under Wisconsin law.

¶ 42. Our answer to the certified question is definitive without going any further; therefore, there is no need to address additional arguments raised by the parties.[18] Endorsement #1 in the excess policy is not valid under Wisconsin law in its attempt to preclude underinsured motorist coverage to Mau.

*By the Court.*—Question answered and cause remanded to the Supreme Court of North Dakota for further proceedings consistent with this opinion.

¶ 43. JON P. WILCOX, J. (dissenting). Although I join Justice Sykes' dissent, which would hold that Mau was an occupancy insured rather than a named insured under Wisconsin law, I write separately because I think the court should go on to decide the question of whether Mau was "occupying" the rental vehicle when the collision occurred.

¶ 44. Both the majority opinion and Justice Sykes' dissent conclude that the question of whether Mau was occupying the vehicle was not certified to this court. Majority op. at ¶ 42 n.18, Justice Sykes' dissent at ¶ 58 n.1. I do not read the certified question that way. In its certification to this court, the Supreme Court of North Dakota states:

[W]e respectfully certify the following question to the Wisconsin Supreme Court:

---

[18] We disagree with Justice Wilcox's dissent and do not address whether Wolfgang Mau was occupying the vehicle. Furthermore, we do not address whether the excess policy contains an exhaustion clause or what, if any, impact *Danbeck v. American Family Mutual Insurance Co.*, 2001 WI 91, 245 Wis. 2d 186, 629 N.W.2d 150, might have on this case.

Is Endorsement #1 defining an "Insured" as "Only while occupying the Alamo rental vehicle, any rentee/lessee who purchases the International Extended Protection (IEP) Option, but only while the Alamo vehicle is being driven by the rentee/lessee" valid under Wisconsin law to preclude underinsured motorist coverage to one who rents a car from Alamo, purchases the IEP Option, *and is injured while sitting in a different car?*

We invite the justices of the Wisconsin Supreme Court to reformulate our question if they deem it appropriate. We do not intend anything in this certification to limit the scope of their inquiry. . . .

*Mau v. N.D. Ins. Reserve Fund,* 610 N.W. 2d 761, 766–67 (N.D. 2000) (emphasis added). Earlier in its certification, the North Dakota court also notes "Mau has not shown he was occupying or using the rental car under Wisconsin law when he was injured." *Id.* at 766.

¶ 45. I do not read these sections as preventing us from reaching the occupancy question. Rather, I read them as recognizing that the question of whether Mau was an occupant of the insured vehicle has not been decided under Wisconsin law and is an integral part of what the Supreme Court of North Dakota has asked us to decide. Therefore, because I would find that Mau was an occupancy insured under the contract, I would also find it necessary to address the question of whether Mau was an occupant of the insured vehicle. I analyze this question now.

¶ 46. In the insurance contract at issue, "occupying" is defined as "in, upon, getting in, on, out of or off the rental vehicle"—a typical definition in insurance contracts. However, because this court has recognized

that commonly used terms like "upon," "in" and "entering into or alighting from" may be ambiguous, *Moherek v. Tucker,* 69 Wis. 2d 41, 45–46, 230 N.W.2d 148 (1975), and because this language normally varies only slightly from contract to contract, Wisconsin courts have tended to apply a standardized meaning to the term "occupy."

¶ 47. In general, Wisconsin courts have tended to interpret the term "occupy" rather liberally. It is obvious that when a person is in the passenger compartment of a vehicle, that person is occupying it. However, we have held that in some cases, occupancy extends beyond the inside of the vehicle. In Wisconsin, " 'a person has not ceased "occupying" a vehicle until he has severed his connection with it—i.e., when he is on his own without any reference to it. If he is still vehicle-oriented, as opposed to highway oriented, he continues to "occupy" the vehicle.' " *Id.* at 47 (quoting *State-Wide Ins. Co. v. Murdock,* 254 N.E.2d 908 (N.Y. 1969)).

¶ 48. This court and the Wisconsin Court of Appeals have recognized that to be "vehicle-oriented," a person does not have to be inside, or even touching the vehicle. For instance, an individual can "occupy" a vehicle while waiting on the street corner to be picked up by the vehicle because that person is vehicle-oriented. *Kreuser v. Heritage Mut. Ins. Co.,* 158 Wis. 2d 166, 169, 461 N.W.2d 806 (Ct. App. 1990). Similarly, a plaintiff who has exited the insured car and is injured when a second car hits the insured car and pushes it into the plaintiff is still vehicle-oriented and is therefore "occupying" the insured car under our rule. *Sentry Ins. Co. v. Providence Wash. Ins. Co.,* 91 Wis. 2d 457, 458–61, 283 N.W.2d 455 (Ct. App. 1979). However, our cases have not pushed the definition of "vehicle-orientation" as far as Mau asks us to in this case.

¶ 49. I would hold that the limit of vehicle-orientation was reached here. Despite our generally liberal construction of the term "occupy," I would hold that Mau fell outside of our definition while he was sitting in the police vehicle. I would base this on the common-sense principle that a person cannot occupy two vehicles at the same time. When a person is sitting in one car, that person logically cannot be occupying another.

¶ 50. I am persuaded by the reasoning of the Rhode Island Supreme Court in *General Accident Insurance Company of America v. D'Alessandro*, 671 A.2d 1233 (R.I. 1996). The facts of *D'Alessandro*, as they pertain to the occupancy question, are very similar to those in the present case. D'Alessandro's vehicle had broken down and she had pulled into the breakdown lane of the highway. A Rhode Island state police officer stopped to assist D'Alessandro, parking his patrol vehicle behind her car. D'Alessandro was waiting in the officer's patrol vehicle for a tow truck to arrive when another motorist collided with the police cruiser, injuring D'Alessandro and the officer.

¶ 51. In the resultant lawsuit, the question arose of whether D'Alessandro was "occupying" her own vehicle at the time of the collision. Despite the fact the Rhode Island court affords a liberal interpretation to the term "occupy", *see, e.g., Gen. Accident Ins. Co. of Am. v. Olivier*, 574 A.2d 1240, 1241 (R.I. 1990), the court held that D'Alessandro was not occupying her car in this instance. The court held that it would be clearly impossible for D'Alessandro to "occupy" two vehicles at

the same time. *D'Alessandro,* 671 A.2d at 1235.[1] I agree with this conclusion, and I find it applicable in this case.

¶ 52. Mau points out that many other jurisdictions have taken the same "liberal" approach to defining occupancy as we have in Wisconsin. *See, e.g., Genther v. Progressive Cas. Ins. Co.,* 681 A.2d 479, 480 n.1 (Me. 1996) (listing cases in a number of jurisdictions that use a liberal definition of "occupy"). However, Mau is unable to show us a jurisdiction that has extended the definition of occupancy to include an individual sitting in another car, and I am not persuaded that we should be the jurisdiction that does so.

¶ 53. Therefore, in addition to finding that Mau is not a named insured, I would also reach the question of whether Mau was occupying the rental vehicle. In answering that question, I would hold that at the time of the collision, Mau did not occupy the vehicle for the purposes of the insurance contract.

¶ 54. For the foregoing reasons, I respectfully dissent.

¶ 55. DIANE S. SYKES, J. *(dissenting).* The majority's invalidation of the occupancy restriction in the insurance policy in question in this case is based upon its conclusion that the plaintiff, Wolfgang Mau, is a "named insured" under the policy. I conclude that Mau is an occupancy insured, not a named insured.

¶ 56. Alamo Rent-A-Car, Inc. insured its fleet of rental cars with National Union Fire Insurance Company of Pittsburgh pursuant to a business auto insurance policy, which provided liability coverage, and a $1

---

[1] The Montana Supreme Court came to a similar conclusion in *Chilberg v. Rose,* 903 P.2d 1377, 1379 (Mont. 1995) ("Obviously, Chilberg can only 'occupy' one car at a time.").

million excess insurance policy, which provided, among other things, uninsured (UM) and underinsured (UIM) motorist coverage. Mau rented a car from Alamo in Milwaukee, and, as part of the transaction, elected to pay for the International Extended Protection (IEP) Option, which provided UM and UIM coverage under the excess policy. Mau seeks to recover the proceeds of the UIM policy as a result of injuries sustained in an accident in North Dakota.

¶ 57. The excess policy makes it clear that it provides coverage only to rental car customers who purchase the IEP Option, and only while they are "occupying the Alamo rental vehicle." The question certified by the North Dakota Supreme Court is whether the occupancy restriction in the National Union policy is valid under Wisconsin law.[1] As the majority notes, the answer depends on whether Mau is a named insured under the excess policy.

¶ 58. The excess policy, by its terms, provides coverage "in accordance with the applicable insuring agreements, terms, conditions, and exclusions of the Underlying Policy #RMCA 1432406." The UM/UIM endorsement to the excess policy provides that "this endorsement modifies insurance provided under the following: RMCA 1432406." The Underlying Policy #1432406 is the business auto liability policy paid for by and issued to Alamo to insure its fleet of rental cars. The declarations page of that policy specifies Alamo as the named insured, and the policy also provides that

---

[1] The parties briefed the question of whether Mau was legally "occupying" the rental car for insurance coverage purposes even though he was seated in the deputy sheriff's squad car at the time of the accident. The North Dakota Supreme Court, however, did not certify this question to us, and the court does not decide it. *See*, majority op. at ¶ 42 n.18.

"[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations," that is, Alamo.

¶ 59. Endorsement #1 to the liability policy further specifies "WHO IS AN INSURED," and sets forth four categories of insureds: "you" (meaning Alamo, the named insured, pursuant to the above-cited language); and three categories of persons who are insured "only while occupying" the Alamo vehicle. The first two of these categories encompass persons who lease Alamo's rental cars, and the third pertains to Alamo's employees. Significantly, the endorsement does *not* say "who is a *named* insured"; the endorsement reiterates that the policy is issued to Alamo, and Alamo is listed on the declarations page as the named insured.

¶ 60. Endorsement #3 of the liability policy contains a lengthy listing of "*Named Insureds*," starting with Alamo, followed by a list of corporate entities apparently related to Alamo, as well as certain individuals apparently associated with Alamo's management. This endorsement does not include in its listing of named insureds persons who lease Alamo's rental cars. Endorsement #11 of the liability policy rejects UM/UIM coverage in states in which it is permissible to do so, and lists the applicable UM/UIM coverages in states which require it. This endorsement also contains similar occupancy restrictions as Endorsement #1 for purposes of the liability policy's UM/UIM endorsement.

¶ 61. The declarations page of the excess policy states "NAMED INSURED: SEE ENDORSEMENT #1" and "ADDRESS: SEE ENDORSEMENT #2." Endorsement #1 of the excess policy states that it is "[i]ssued to Alamo Rent-A-Car, Inc.," and, following the language "Who Is An Insured," lists three categories of rentee/lessee insureds. The first of these is implicated

here, and provides excess coverage to a rentee/lessee who purchases the IEP Option, but "[o]nly while occupying the Alamo rental vehicle." Endorsement #2 of the excess policy provides that "[i]t is agreed that Alamo Rent-A-Car, Inc. shall act on behalf of all persons and organizations insured under this policy with respect to all matters pertaining to the insurance afforded by this policy," but does not list an address.

¶ 62. The majority concludes that because the "Named Insured" line on the declarations page of the excess policy refers the reader to Endorsement #1 of the excess policy, all those listed as "insureds" in Endorsement #1 must necessarily be "named insureds." I disagree. Considering the excess policy and the underlying policy to which it relates as a whole, it is clear to me that one who leases a car from Alamo and elects to purchase the IEP Option does not acquire "named insured" status, but merely retains his "occupancy insured" status consistent with the underlying policy, but is entitled to the higher coverage limits of the excess policy.

¶ 63. *Meyer v. City of Amery,* 185 Wis. 2d 537, 518 N.W.2d 296 (Ct. App. 1994), supports this conclusion. In *Meyer,* the plaintiff, Mark Meyer, a City of Amery police officer, was injured in the line of duty by an uninsured motorist after having exited his squad car to investigate a complaint. The City's fleet of squad cars was insured by Wausau Insurance Company under a policy that specified the City as the named insured and persons "occupying" a covered auto as additional insureds. Meyer sought recovery of the policy's UM benefits.

¶ 64. The circuit court in *Meyer* awarded coverage, but the court of appeals reversed, noting that the City's policy with Wausau Insurance was a commercial fleet policy, and concluding that Meyer was an occu-

pancy insured, not a named insured, under the policy. *Id.* at 544. The court of appeals further concluded that the policy language restricting the availability of UM coverage to the named insured and those injured while occupying a covered auto was not invalid under Wis. Stat. § 632.32(4), which requires auto insurance policies in this state to provide UM insurance in certain minimum amounts. *Id.* at 547.

¶ 65. The court of appeals in *Meyer* took particular note of the fact that courts have construed UM/UIM coverage to be "personal and portable" and available whether the insured is injured in relation to the covered automobile or otherwise. *Id.* at 545. The court then concluded that to find coverage under the policy and the statute "would result in each commercial fleet policy providing UM coverage to all of [the City's] employees and their families, whether they were injured in the course of their employment or in a situation completely unrelated to work. This is a result not intended by the contracting parties, nor the legislature." *Id.* at 547.

¶ 66. I reach a similar conclusion here. To interpret the policies in this case as providing "personal and portable" UM/UIM coverage to anyone who rents an Alamo rental car and elects the IEP option—that is, coverage for damages caused by uninsured or underinsured motorists in situations *completely unrelated* to the use of the rental car—goes beyond what the parties obviously intended. Mau's election of the IEP option provided him with the increased coverages of the excess policy, but did not convert his status to that of a "named insured" under either the excess or the underlying liability policies.

¶ 67. The majority's conclusion that the occupancy restriction violates Wisconsin law depends upon its conclusion that Mau is a named insured under the

excess policy. There is nothing in Wisconsin law that prohibits an occupancy restriction for those who are not named insureds. Because I conclude that Mau is an occupancy insured, not a named insured, I respectfully dissent.

¶ 68. ˙I am authorized to state that Justices JON P. WILCOX and ANN WALSH BRADLEY join this opinion.