Nathan GERDMANN, by his Guardian ad Litem Robert L. Habush and Terry Gerdmann, Plaintiffs,

v.

UNITED STATES FIRE INSURANCE COMPANY, Defendant-Appellant,

EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, Defendant,

HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant and Third-Party Plaintiff,

ROEN SALVAGE COMPANY, Defendant and Third-Party Plaintiff-Appellant,

The MANITOWOC COMPANY, INC., and Employers Mutual Liability Insurance Company of Wisconsin, Third-Party Defendants-Respondents.

Court of Appeals

*No. 83–1275. Submitted on briefs March 5, 1984.— Decided May 22, 1984.*
(Also reported in 350 N.W.2d 730.)

368

For the appellants the cause was submitted on the briefs of *L. William Staudenmaier, Bruce A. Olson* and *Cook & Franke, S.C.,* of Milwaukee.

For the respondents the cause was submitted on the brief of *Walter S. Davis, Esq.,* and *Terrence J. Gaffney, Esq.,* attorneys, and *Davis & Kuelthau, S.C.,* of counsel, all of Milwaukee.

Before Foley, P.J., Dean and Cane, JJ.

DEAN, J.  Roen Salvage Company and its insurer, United States Fire Insurance Company, appeal a judgment awarding $40,675.34 to The Manitowoc Company, Inc., and its insurer, Employers Mutual Liability Insurance Company of Wisconsin.  Nathan Gerdmann had sued Roen for personal injury damages, and Roen sought contribution from Manitowoc.  Based on an indemnifica-

tion agreement with Roen, Manitowoc counterclaimed for the costs and attorney fees it incurred in defending against Roen's action. Because sec. 895.49, Stats., does not void the indemnity agreement between Roen and Manitowoc, and because we find no trial court errors that require reversal, we affirm the judgment.

Gerdmann, an employee of Bay Shipbuilding, was injured when he was accidentally struck by a wooden pole that had been lying beside a haul road on Manitowoc's property. As a Roen dump truck drove down the road past Gerdmann, a cable hanging from the truck became looped around the pole and flipped the pole across the road. Roen and Bay Shipbuilding were doing work for Manitowoc at the time.

Roen and United States Fire settled with Gerdmann for three million dollars, and he is not involved in this appeal. Roen's action against Manitowoc claimed a violation of the safe place statute, sec. 101.11, Stats. A jury found in favor of Manitowoc, and the trial court granted Manitowoc judgment on their counterclaim for indemnification.

Roen contends that the trial court erred (1) by not holding that Manitowoc had constructive notice of the unsafe location of the wooden pole as a matter of law; (2) because the jury instructions on notice were incomplete; and (3) because the form of the special verdict question on notice required the jury to answer two questions. Roen also contends that the indemnity clause in its contract with Manitowoc is void under sec. 895.49 and that, if the clause is not void, it does not require indemnification for the costs of the contribution action. We address each of these contentions separately.

■

Roen did not conclusively establish that Manitowoc had constructive notice of the unsafe condition. The notice question was therefore properly submitted to the jury.

Section 101.11(1) requires employers to provide a safe place of employment for employees and frequenters. An employer is not liable under the statute, however, unless the employer has either actual or constructive notice of the unsafe condition that caused the injury. *Topp v. Continental Insurance Co.*, 83 Wis. 2d 780, 789, 266 N.W.2d 397, 402 (1978). An employer has constructive notice of an unsafe condition if it existed long enough before the accident so that the employer, in the exercise of reasonable diligence, should have discovered it in time to take reasonable precautions to remedy the situation. *Id.* Whether an employer had notice depends upon the surrounding facts and circumstances and is generally a jury question. *De Marco v. Braund*, 30 Wis. 2d 675, 677, 142 N.W.2d 165, 167 (1966).

Roen contends that the testimony of several Bay Shipbuilding employees that they thought they saw or did see a pole alongside the road before the accident, when combined with aerial photos taken twelve days before the accident showing a pole lying along the haul road, requires a holding that Manitowoc had constructive notice as a matter of law.[1] Roen also contends that the trial court erred by not changing the jury's answer on the notice question from no to yes.

The employees, however, were not certain of the date that they first noticed the pole, and there was no evidence that the pole shown in the photographs was the same pole that injured Gerdmann. There was testimony that there were constantly shifting piles of construction materials and moving vehicles along the haul road. This

[1] Manitowoc retained general supervision over Roen's work and designated an employee to coordinate the simultaneous dredging and shipbuilding work and to serve as a liaison with Bay Shipbuilding and Roen. Thus, if Bay Shipbuilding employees had notice, Manitowoc had notice.

left open the question of whether Manitowoc had constructive notice of the pole's location. The question therefore was properly left for the jury to decide. A jury's special verdict answer should not be changed if there is any credible evidence to support the answer. *Bennett v. Larsen Co.*, 114 Wis. 2d 265, 278, 338 N.W.2d 510, 517 (Ct. App. 1983). The testimony that materials were constantly stacked and shifted along the road provides credible evidence to support the jury's verdict.

Roen waived its objections to the trial court's jury instructions because it did not specifically object to the instructions. Roen contends that the trial court erred because it did not instruct the jury that constructive notice can be found when an unsafe condition existed for little or no time if there is a reasonable probability that an unsafe condition will occur because of the nature of the business and the manner in which it is conducted. *See Dykstra v. Arthur G. McKee & Co.*, 92 Wis. 2d 17, 28–29, 284 N.W.2d 692, 698 (Ct. App. 1979), *aff'd*, 100 Wis. 2d 120, 301 N.W.2d 201 (1981) ; *Steinhorst v. H.C. Prange Co.*, 48 Wis. 2d 679, 683–84, 180 N.W.2d 525, 527 (1970) ; *Strack v. Great Atlantic & Pacific Tea Co.*, 35 Wis. 2d 51, 57–58, 150 N.W.2d 361, 364 (1967). At trial, however, Roen objected only to the inclusion of any notice question and did not specifically object to the trial court's standard instruction. *See* Wis J I—Civil 1900.4 (1981). It therefore waived its right to object to the standard jury instruction's inclusion. *See Peeples v. Sargent,* 77 Wis. 2d 612, 636, 253 N.W.2d 459, 468 (1977). We also note that Manitowoc's business is not similar to the unique operations found in *Dykstra, Steinhorst,* and *Strack,* and Roen was not prejudiced by the trial court's failure to include instructions based on these cases.

Roen also did not specifically object to the verdict question on constructive notice and it was not prejudiced

by the trial court's error. The court asked the jury if Manitowoc had notice of the pole's location and, in its instructions, it presumed that the location was unsafe. This question, asked before the jury decided if the location was unsafe, was prejudicial to Manitowoc because it presumed that an unsafe condition existed.[2] Roen was not prejudiced by this question. *See Peeples,* 77 Wis. 2d at 639, 253 N.W.2d at 470.

Section 895.49 does not void the indemnity clause in Roen's contract with Manitowoc. The interpretation of this statute is a question of law. *See Nelson v. Union National Bank,* 111 Wis. 2d 313, 315, 330 N.W.2d 225, 226–27 (Ct. App. 1983). Section 895.49 voids agreements in construction contracts that limit or eliminate tort liability.[3] Since the statute limits the common law right to freely contract, we must interpret it narrowly, placing the least possible restriction on the common law right. *See Wisconsin Bankers Association v. Mutual Savings and Loan Association,* 96 Wis. 2d 438, 452–53, 291 N.W. 2d 869, 876–77 (1980).

The indemnity agreement between Manitowoc and Roen states:

---

[2] Since the jury found that Manitowoc did not have notice, it did not answer the question that asked whether the pole presented an unsafe condition. The trial court would have avoided this problem by first asking if an unsafe condition existed and, if the answer was yes, asking if Manitowoc had notice.

[3] Section 895.49, Stats., states:

Certain agreements to limit or eliminate tort liability void. (1) Any provision to limit or eliminate tort liability as a part of or in connection with any contract, covenant or agreement relating to the construction, alteration, repair or maintenance of a building, structure, or other work related to construction, including any moving, demolition or excavation, is against public policy and void.

(2) This section does not apply to any insurance contract or worker's compensation plan.

(3) This section shall not apply to any provision of any contract, covenant or agreement entered into prior to July 1, 1978.

Contractor shall indemnify the Owner and Engineer against and hold the Owner and Engineer harmless from any and all liability for damages on account of injury, including death, to persons, including employees of Contractor, or damage to property resulting from or arising out of or in any way connected with the performance of work under this Contract by Contractor or any Subcontractor. In addition, Contractor shall reimburse Owner for all costs, expenses, and loss incurred by them in consequence of any claims, demands, and causes of action, whether meritorious or not, which may be brought against them and arising out of the operations covered by the Contract. . . . Contractor shall pay any costs, including Attorney's fees, that may be incurred by Owner in enforcing this indemnity . . . .

In *Dykstra v. Arthur G. McKee & Co.*, 100 Wis. 2d 120, 301 N.W.2d 201 (1981), the supreme court notes that sec. 895.49 does not necessarily outlaw indemnity agreements of this type. *Id.* at 130 n. 4, 301 N.W.2d at 206 n. 4. Although the court in *Dykstra* did not decide this question because the statute was not in effect when the *Dykstra* indemnity agreement was made, the court's observation is important. This indemnity agreement neither limits nor eliminates Manitowoc's tort liability to third parties. Rather, it makes Roen the insurer should damages result. The *Dykstra* footnote indicates that the supreme court did not believe that the statute clearly voids such indemnity agreements, and since the statute must be interpreted as narrowly as possible, we will not extend its coverage to void this indemnity agreement.

Finally, the indemnity clause applies to Roen's action for contribution against Manitowoc. Roen claims that the plain meaning of the clause's language shows that the clause does not apply when the parties to the agreement are adverse. Both parties contend that the language of the agreement is clear, and the trial court's

decision was based only upon the language of the written agreement. Construction of a written contract, where the language is unambiguous, is a question of law that we independently determine. *Pleasure Time, Inc. v. Kuss,* 78 Wis. 2d 373, 379, 254 N.W.2d 463, 467 (1977).

The plain language of the clause is unambiguous. Roen argues that the use of the word "them" in the clause refers to both Roen and Manitowoc, and that the clause only covers actions brought against both. The clause, however, requires Roen to reimburse "Owner for all costs . . . incurred by them." The contract defines the term "Owner" as referring to Manitowoc, acting on behalf of Bay Shipbuilding. If "them" referred to both Roen and Manitowoc, the clause would require Roen to reimburse Manitowoc for costs incurred by Roen. This would be an unreasonable construction of the language, which should be avoided if possible. *See Wilke v. First Federal Savings & Loan Association,* 108 Wis. 2d 650, 657, 323 N.W.2d 179, 182 (Ct. App. 1982). The term "them" unambiguously refers only to the owner, Manitowoc.

The indemnity clause provides for reimbursement of costs and fees Manitowoc incurs "in consequence of any claims, demands, and causes of action . . . which may be brought against them and arising out of the operations covered by the Contract." The clause does not distinguish between claims brought by third parties and actions brought for contribution. It covers "any claims" arising from the dredging operations, which includes an action for contribution.

*By the Court.*—Judgment affirmed.