REBECCA FRANK DALLET, J.
*417 ¶1 Rural Mutual Insurance Company seeks review of an unpublished per curiam decision of the court of appeals[1] affirming the circuit court's grant of summary judgment dismissing Rural Mutual's subrogation claims.[2] The circuit court determined *182 that Rural Mutual's claims against Lester Buildings, LLC, Phoenix Insurance Company, Van Wyks, Inc., and West Bend Mutual Insurance Company were barred pursuant to a subrogation waiver contained in a Lester Buildings' contract with Rural Mutual's insured, Jim Herman, Inc. ("Herman" *418 ). The circuit court also found that Wis. Stat. § 895.447 did not void that subrogation waiver.[3]
¶2 The court of appeals affirmed the circuit court and dismissed Rural Mutual's claims. However, the court of appeals declined to address whether Wis. Stat. § 895.447 voided the subrogation waiver, reasoning that the argument was insufficiently developed. We granted review as to two issues: Does § 895.447 void the subrogation waiver at issue? And was the subrogation waiver an unenforceable exculpatory contract contrary to public policy?
¶3 We conclude that Wis. Stat. § 895.447 does not void the subrogation waiver in Lester Buildings' contract because the waiver does not limit or eliminate tort liability. We also conclude that the subrogation waiver is not an unenforceable exculpatory contract contrary to public policy. We therefore affirm the court of appeals.
I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE
¶4 As the court of appeals correctly noted, "[t]he procedural history of this case is lengthy and complicated." Rural Mut. Ins. Co. v. Lester Buildings, LLC, No. 2016AP1837, unpublished slip op., ¶2 (Wis. Ct. App. Apr. 26, 2018). In 2009, Herman entered into a contract with Lester Buildings for the design and construction of a barn on its property. The contract included the following language:
Both parties waive all rights against each other and any of their respective contractors, subcontractors *419 and suppliers of any tier and any design professional engaged with respect to the Project, for recovery of any damages caused by casualty or other perils to the extent covered by property insurance applicable to the Work or the Project, except such rights as they have to the proceeds of such property insurance and to the extent necessary to recover amounts relating to deductibles of self-insured retentions applicable to insured losses.... This waiver of subrogation shall be effective notwithstanding allegations of fault, negligence, or indemnity obligation of any party seeking the benefit or production of such waiver.
¶5 Herman's barn required concrete in several areas, including the foundation, walls, and piers that supported the roof. The specifications for the concrete were provided by Lester Buildings, but Herman entered into a separate contract with Van Wyks in May 2010 to provide the concrete.[4] The barn that Lester Buildings and Van Wyks constructed was covered by Herman's insurance policy with Rural Mutual. In that policy, Rural Mutual explicitly allowed its insured, Herman, to waive its rights without interfering with Rural Mutual's insurance coverage: "You may waive your right of recovery in writing before a loss occurs without voiding the coverage."
*183 ¶6 The barn was completed in June 2010. In May 2013, one half of the barn collapsed due to strong winds, killing or causing catastrophic injuries to a large number of Herman's cattle. Rural Mutual asserts that the barn collapsed due to the improper installation of steel rebar cages in the concrete piers supporting *420 the barn's roof. The cages were allegedly installed by Van Wyks several inches below where Lester Buildings' design had called for them to be installed, which led to the column tops cracking from the strong winds.[5] Rural Mutual paid approximately $ 607,000 to rebuild Herman's barn and approximately $ 51,000 for the losses related to cattle and other miscellaneous damages.
¶7 In 2014, Rural Mutual brought a subrogation action against Lester Buildings and its insurer, Phoenix, alleging that Lester Buildings had breached its contract with Herman and had been negligent in placing the rebar cages lower than where the specifications required. Lester Buildings and Phoenix then filed third-party cross-claims against Van Wyks and its insurer, West Bend, alleging that if Lester Buildings was liable to Rural Mutual, then Van Wyks would be responsible for any damages owed. Rural Mutual filed an amended complaint which included a count against West Bend, pursuant to Wisconsin's direct action statute, Wis. Stat. § 632.24.[6] Lester Buildings also moved to join Herman as a defendant in the case. Lester Buildings and Van Wyks, and their respective insurers (collectively the "Contractors"), filed separate motions for summary judgment against Rural Mutual. The Contractors asserted that the subrogation waiver in the Lester Buildings' contract barred Rural Mutual's claims against all of them.
*421 ¶8 The circuit court granted summary judgment to the Contractors on all of Rural Mutual's claims, reasoning that the subrogation waiver was enforceable and precluded Rural Mutual's claims. The circuit court determined that Gerdmann and Dykstra controlled its interpretation of Wis. Stat. § 895.447 and resolved the claims against Rural Mutual. Gerdmann v. United States Fire Ins. Co., 119 Wis. 2d 367, 350 N.W.2d 730 (Ct. App. 1984) ; Dykstra v. Arthur G. McKee & Co., 100 Wis. 2d 120, 301 N.W.2d 201 (1981). In affirming the circuit court's decision, the court of appeals did not address Rural Mutual's argument that § 895.447 barred the subrogation waiver because it found Rural Mutual's argument regarding the specific waiver to be "woefully insufficient." Rural Mut., No. 2016AP1837, ¶20.[7] Rural Mutual filed a motion to reconsider, *184 which was denied. Rural Mutual then petitioned this court for review.
II. STANDARD OF REVIEW
¶9 We review a decision on summary judgment using the same methodology as the circuit court.
*422 Green Spring Farms v. Kersten, 136 Wis. 2d 304, 314-15, 401 N.W.2d 816 (1987). Summary judgment shall be granted where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2). The facts related to this issue are not in dispute and therefore only questions of law remain. Statutory interpretation and the interpretation of an insurance policy present questions of law that this court reviews de novo. Mau v. North Dakota Ins. Reserve Fund, 2001 WI 134, ¶¶12, 28, 248 Wis. 2d 1031, 637 N.W.2d 45.
III. ANALYSIS
¶10 This case involves the validity of a subrogation waiver contained in Lester Buildings' contract with Rural Mutual's insured, Herman. The Contractors argue that Rural Mutual's subrogation claims are entirely precluded by the subrogation waiver in Lester Buildings' contract with Herman. Rural Mutual asserts that Wis. Stat. § 895.447 voids the subrogation waiver. In the alternative, Rural Mutual asserts that the subrogation waiver is an unenforceable exculpatory contract contrary to public policy.[8]
A. Wisconsin Stat. § 895.447 does not void the subrogation waiver.
¶11 We first interpret Wis. Stat. § 895.447 to determine whether it voids the subrogation waiver. Statutory interpretation begins with the language of the statute and if the meaning is plain, the inquiry *423 ordinarily ends. State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. "A statute's purpose or scope may be readily apparent from its plain language or its relationship to surrounding or closely-related statutes-that is, from its context or the structure of the statute as a coherent whole." Id., ¶49.
¶12 We begin with an examination of the plain language of Wis. Stat. § 895.447, which reads:
Any provision to limit or eliminate tort liability as a part of or in connection with any contract, covenant or agreement relating to the construction, alteration, repair or maintenance of a building, structure, or other work related to construction, including any moving, demolition or excavation, is against public policy and void.
(Emphasis added.) Neither § 895.447 nor surrounding statutes define the term "tort liability." "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially defined words or phrases are given their technical or special definitional meaning." Kalal, 271 Wis. 2d 633, ¶45, 681 N.W.2d 110. "Technical terms or legal terms of art appearing in a statute are given their accepted technical or legal definitions ...." See Bosco v. LIRC, 2004 WI 77, ¶23, 272 Wis. 2d 586, 681 N.W.2d 157 ; see also Wis. Stat. § 990.01(1).
¶13 The dispute lies in whether the subrogation waiver here limits or eliminates "tort liability" and is therefore void. Due to the absence of a statutory definition for the legal term "tort liability," we *185 look to Black's Law Dictionary for assistance. A "tort" is defined *424 as a "civil wrong ... for which a remedy may be obtained." Tort, Black's Law Dictionary 1717 (10th ed. 2014); see also Curda-Derickson v. Derickson, 2003 WI App 167, ¶17, 266 Wis. 2d 453, 668 N.W.2d 736 (citing to Black's Law Dictionary for the definition of tort). "Liability" is defined as "[t]he quality, state, or condition of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment." Liability, Black's Law Dictionary 1053 (10th ed. 2014). Taken together, "tort liability" is the legal obligation or responsibility to another resulting from a civil wrong or injury for which a remedy may be obtained.[9]
¶14 Rural Mutual selectively reads the words "waive all rights against each other" together with the words "notwithstanding allegations of fault, negligence, or indemnity," in the Lester Buildings' contract and concludes that this language eliminates tort liability in violation of Wis. Stat. § 895.447. The subrogation waiver must be read in its entirety, however, to understand exactly what is being waived: "Both parties waive all rights against each other ... for recovery of any damages ... to the extent covered by property insurance .... This waiver of subrogation shall be effective notwithstanding allegations of fault, negligence, or indemnity obligation of any party ...." (Emphasis added.)[10]
*425 ¶15 The subrogation waiver does not limit or eliminate the legal responsibility of the Contractors to Herman for the collapse of Herman's barn. The Contractors and any other subcontractors or suppliers who constructed the barn are still liable to Herman for their negligent acts.[11] Instead, the subrogation waiver waives Herman's right to recover damages from the Contractors for their wrongful acts to the extent those damages are covered by a property insurance policy such as the one between Herman and Rural Mutual. Responsibility for payment of damages, the remedy for tort liability, has shifted from the Contractors to Rural Mutual.[12] The dissent improperly equates collection of damages with liability and asserts that if Herman cannot collect all of its damages from the Contractors, then the Contractors' liability is limited.[13] However, the Contractors could be 100 percent liable for wrongful conduct but, based on the subrogation waiver expressly allowed by Rural Mutual's policy, Rural Mutual could be responsible for paying damages to Herman for property loss.
*186 *426 ¶16 Moreover, the remedy that may be obtained as a result of the Contractors' civil wrong is not limited because Herman may still recover damages that are not covered by its policy with Rural Mutual, including any deductibles applicable to its losses.[14] In fact, Herman pursued and ultimately resolved its claims against the Contractors for uncovered losses they allegedly caused.[15]
¶17 Lastly, we examine prior case law interpreting Wis. Stat. § 895.447 to corroborate its plain meaning. See Legue v. City of Racine, 2014 WI 92, ¶61, 357 Wis. 2d 250, 849 N.W.2d 837 ; Force ex rel. Welcenbach v. American Family Mut. Ins. Co., 2014 WI 82, ¶31, 356 Wis. 2d 582, 850 N.W.2d 866. Only one case has applied the plain language of Wis. Stat. § 895.447, Gerdmann, 119 Wis. 2d 367, 350 N.W.2d 730, and it supports our conclusion regarding the subrogation waiver at issue. In Gerdmann, the court of appeals held that an indemnity clause between Roen, a contractor, and Manitowoc, the property owner, was not void under Wis. Stat. § 895.49, the statutory precursor to § 895.447.[16] Gerdmann, 119 Wis. 2d at 374, 350 N.W.2d 730. The *427 Gerdmann court reasoned that the indemnity agreement at issue "neither limits nor eliminates Manitowoc's tort liability to third parties [Gerdmann]. Rather, it makes Roen the insurer should damages result." Id. The Gerdmann court relied on this court's decision in Dykstra, 100 Wis. 2d 120, 301 N.W.2d 201, which upheld an indemnification agreement executed prior to the codification of the precursor to § 895.447. In a footnote the court stated: "[w]e note in passing, however, that it does not appear that this statute [ § 895.447 ] necessarily outlaws indemnity agreements of the kind with which this opinion is concerned." Dykstra, 100 Wis. 2d at 130 n.4, 301 N.W.2d 201. The Gerdmann court characterized this court's observation in Dykstra as "important" because it indicated that this court "did not believe that the statute clearly voids such indemnity agreements." Gerdmann, 119 Wis. 2d at 374, 350 N.W.2d 730. As in Gerdmann, the subrogation waiver neither limits nor eliminates the Contractors' tort liability, it simply makes Rural Mutual the insurer should property damage result. Therefore, we conclude that § 895.447 does not void the subrogation waiver here because it does not limit or eliminate tort liability.
B. The subrogation waiver does not relieve a party from liability for harm caused by its own negligence and therefore it is not an unenforceable exculpatory contract.
¶18 Rural Mutual asserts that the subrogation waiver is an unenforceable exculpatory *187 contract that is *428 contrary to public policy. While Rural Mutual did not brief this argument to the court of appeals, we will nonetheless consider it.[17] To the extent that Rural Mutual argues that Wisconsin law prohibits the enforcement of exculpatory contracts for reckless conduct, there is no evidence in the record to establish reckless conduct on the part of the Contractors, and therefore we will not reach that issue.[18]
¶19 In Merten v. Nathan, 108 Wis. 2d 205, 210, 321 N.W.2d 173 (1982), we defined an exculpatory contract as one which "relieve[s] a party from liability for harm caused by his or her own negligence." In its oral ruling in this case, the circuit court held that the subrogation waiver was not an all-encompassing avoidance of liability and therefore did not meet the definition of an exculpatory contract.[19] The circuit court relied upon Rainbow Country Rentals & Retail, Inc. v. Ameritech Publishing, Inc., 2005 WI 153, 286 Wis. 2d 170, 706 N.W.2d 95, where this court held that a contract restricting recoverable damages, but not releasing a party from liability, did not meet the operational definition of an exculpatory contract.
¶20 We agree with the circuit court's conclusion. As detailed above, the subrogation waiver in this *429 case did not exculpate the Contractors from liability, it merely shifted the responsibility for payment of damages. If the Contractors were negligent or otherwise at fault, the subrogation waiver shifted recovery of damages for property loss to Herman's insurer, Rural Mutual, only to the extent covered by Herman's policy with Rural Mutual. Herman could still recover damages not covered by its policy with Rural Mutual from the Contractors, including any deductibles.
¶21 We also observe that the court of appeals rejected a public policy challenge to a contractual subrogation waiver in a similar situation involving sophisticated parties where the waiver was expressly authorized by the insurer in its policy. See Factory Mut. Ins. Co. v. Citizens Ins. Co. of America, 2006 WI App 16, ¶20, 288 Wis. 2d 730, 709 N.W.2d 82. Here, Rural Mutual expressly anticipated and allowed for this outcome, as evidenced by its policy language permitting Herman to "waive [its] right of recovery in writing before a loss occurs without voiding the coverage." Rural Mutual received a benefit, in the form of premium payments, for expressly allowing its insured to allocate risk in this way. We will not rewrite Rural Mutual's policy to exonerate it from a risk that it contemplated and for which it received a premium. See Algrem v. Nowlan, 37 Wis. 2d 70, 79, 154 N.W.2d 217 (1967) (" 'when parties to a contract adopt a provision ... which contains no element of ambiguity, the court has no right, by a process of interpretation to relieve one of them from any disadvantageous terms which [it] has actually made' ") (quoted source omitted).
¶22 The subrogation waiver in this case does not immunize the allegedly negligent parties from *430 liability or require the injured party to go uncompensated, and thus it is *188 not an unenforceable exculpatory contract contrary to public policy.
IV. CONCLUSION
¶23 We conclude that Wis. Stat. § 895.447 does not void the subrogation waiver in Lester Buildings' contract because the waiver does not limit or eliminate tort liability. We also conclude that the subrogation waiver is not an unenforceable exculpatory contract contrary to public policy. We therefore affirm the court of appeals and uphold the grant of summary judgment.
By the Court. -The decision of the court of appeals is affirmed.
¶24 SHIRLEY S. ABRAHAMSON, J., withdrew from participation.
¶25 ANNETTE KINGSLAND ZIEGLER, J., did not participate.
KELLY, J. dissents, joined by A.W. BRADLEY, J. (opinion filed).

Rural Mut. Ins. Co. v. Lester Buildings, LLC, No. 2016AP1837, unpublished slip op., 382 Wis.2d 269, 2018 WL 1989672 (Wis. Ct. App. Apr. 26, 2018).

Judges Maryann Sumi and Valerie Bailey-Rihn of Dane County Circuit Court presided.

All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

The Van Wyks' contract also contained a waiver of claims, similar to that found in the Lester Buildings' contract, which read: "Both parties waive all rights against each other and any of their respective contractors, subcontractors and suppliers...." Van Wyks' contract is not at issue on appeal.

The parties dispute who is at fault regarding where the rebar cages were ultimately placed.

Wisconsin Stat. § 632.24 reads:
Any bond or policy of insurance covering liability to others for negligence makes the insurer liable, up to the amounts stated in the bond or policy, to the persons entitled to recover against the insured for the death of any person or for injury to persons or property, irrespective of whether the liability is presently established or is contingent and to become fixed or certain by final judgment against the insured.

However, in a footnote, the court of appeals stated that if it had reached the issue, it would have concluded that Wis. Stat. § 895.447 did not void the subrogation waiver. Rural Mut., No. 2016AP1837, ¶23 n.6. The court of appeals observed that the subrogation waiver does not limit Herman from recovering against Lester Buildings in all circumstances. Id. Instead, it limits Herman from recovering damages from Lester Buildings that were covered by insurance and limits recovery by the insurer for damages paid under the insurance policy. Id. For example, the court of appeals discerned that if the collapse was not covered by an insurance policy, there would be no limit on Lester Buildings' tort liability. Id.

Rural Mutual concedes that if the subrogation waiver is valid, all of its claims would be extinguished.

The Supreme Court of Michigan recently took a similar approach in defining the term "tort liability" when there was no statutory definition or case law defining the term. See In re Bradley Estate, 494 Mich. 367, 835 N.W.2d 545, 555 (2013).

Contrary to Rural Mutual's assertion, the language "notwithstanding [any] allegations of fault, negligence, or indemnity" does not broaden the subrogation waiver; rather, it is illustrative of the types of claims that may be brought.

The waiver stated that Lester Buildings and Herman "waive all rights against each other and any of their respective contractors, subcontractors and suppliers of any tier" and do so "notwithstanding allegations of fault, negligence ...." The waiver therefore unambiguously applies to all of the "contractors, subcontractors and suppliers of any tier." As a contractor to Herman, Van Wyks was included within this provision.

Tort liability, "the legal obligation or responsibility to another resulting from a civil wrong or injury for which a remedy may be obtained," does not specify from whom the remedy may be obtained.

The dissent writes: "[o]f course the Contractors' tort liability to Herman is limited-the subrogation clause made it responsible for only 20 percent of the damage it caused." Dissent, ¶39.

The subrogation waiver provides an exception for rights to the proceeds of the property insurance and, as necessary, to recover amounts relating to deductibles.

Herman was ultimately made whole through a combination of its policy with Rural Mutual and its ability to sue the Contractors for damages not covered by that policy.

The indemnity agreement in Gerdmann read:
Contractor shall indemnify the Owner and Engineer against and hold the Owner and Engineer harmless from any and all liability for damages on account of injury, including death, to persons, including employees of Contractor, or damage to property resulting from or arising out of or in any way connected with the performance of work under this Contract by Contractor or any Subcontractor. In addition, Contractor shall reimburse Owner for all costs, expenses, and loss incurred by them in consequence of any claims, demands, and causes of action, whether meritorious or not, which may be brought against them and arising out of the operations covered by the Contract.... Contractor shall pay any costs, including Attorney's fees, that may be incurred by Owner in enforcing this indemnity....
Gerdmann v. United States Fire Ins. Co., 119 Wis. 2d 367, 374, 350 N.W.2d 730 (Ct. App. 1984).

See e.g., Hopper v. City of Madison, 79 Wis. 2d 120, 137, 256 N.W.2d 139 (1977) (noting that whether this court will consider an issue not raised before the circuit court "depends upon the facts and circumstances of each case.").

We decline to answer a question unsupported by the facts of the case or to render an advisory opinion on an issue that is not ripe for adjudication. See Tammi v. Porsche Cars N. Am., Inc., 2009 WI 83, ¶3, 320 Wis. 2d 45, 768 N.W.2d 783.

The circuit court also relied on the equal bargaining positions of the parties; however, we can identify no authority to support the consideration of bargaining positions when deciding if a contract meets the definition of exculpatory.