DANIEL KELLY, J. (dissenting).
¶26 The court's error is really pretty simple. Where the Legislature said that a contract may not limit a tortfeasor's liability, the court heard that a contract may not limit the victim's right to be made whole. These are not the same things. Because the court said they are, I respectfully dissent.
¶27 Demonstrating where the court's analysis stopped tracking Wis. Stat. § 895.447 requires some table-setting. So I'll start with the central parties and some hypothetical numbers. Jim Herman, Inc. ("Herman") hired Lester Buildings, LLC, and others ("the *431 Contractors") to build a barn. The barn failed because of the Contractors' (alleged) negligence, causing Herman significant damages. Rural Mutual Insurance Company ("Rural") paid Herman for most of the damage he suffered, and the Contractors paid the balance. For the sake of simplicity, I'll say the total damages were $ 100,000, Rural paid $ 80,000 of that, and because of the contract clause at issue in this case, the Contractors paid $ 20,000.
¶28 Next we need to know what we mean when we talk about "tort liability." The court provided a workable definition-it is "the legal obligation or responsibility to another resulting from a civil wrong or injury for which a remedy may be obtained." Majority op., ¶13. In this case, therefore, when we speak of tort liability we are speaking of "[the Contractors'] legal obligation or responsibility to [Herman] resulting from a civil wrong or injury for which a remedy may be obtained." Id. That is to say, we look at this from the perspective of what the Contractors owe Herman for their tortious behavior.
¶29 Now we are ready to assess the contract's impact on the tort liability involved in this case. Without Rural's insurance payment and the contract's subrogation waiver, the Contractors would be liable to Herman for $ 100,000. But with the insurance payment and subrogation waiver, the Contractors are liable to Herman for only $ 20,000. In either scenario, Herman still receives $ 100,000. The question is whether the latter scenario represents the limitation or elimination of tort liability.
¶30 The court sees no difference in tort liability between these two scenarios. In fact, it says "[t]he subrogation waiver does not limit or eliminate the legal responsibility of the Contractors to Herman for *432 the collapse of Herman's barn. The Contractors and any other subcontractors or suppliers who constructed the barn are still liable to Herman for their negligent acts." Id., ¶15 (footnote omitted). But how can that be true if the duty to pay Herman has decreased from $ 100,000 to $ 20,000? The *189 court does not explain, but does give some insight into the nature of its error.
¶31 I think the court's misunderstanding stems from the following four errors: (1) its basic misunderstanding of tort law; (2) its failure to distinguish between casualty insurance policies and commercial general liability ("CGL") insurance policies; (3) its conflation of contract and tort liability; and (4) its shift in focus from liability to wholeness.
¶32 The court's first error goes to the very concept of torts. The raison d'être of tort law is holding tortfeasors responsible for the damages they cause. The court, however, isn't so sure. It says: "Tort liability, 'the legal obligation or responsibility to another resulting from a civil wrong or injury for which a remedy may be obtained,' does not specify from whom the remedy may be obtained." Id., ¶15 n.12. Yes, actually it does. The remedy may be obtained from the tortfeasor. The court's own definition of "tort liability" should have informed it that we really do know the identity of the one against whom a remedy may be had. The "legal obligation" and the "remedy" to which the court refers are reciprocals. The one with the right to a remedy is the one to whom the legal obligation is owed. Inversely, the one with a legal obligation owes it to the one with a remedy. So if a civil wrong gives rise to a legal obligation to someone else, the "someone else" is the person who has the right to pursue the remedy. And that person may pursue the remedy against the one who owes the legal obligation. So the court cannot *433 maintain its definition of "tort liability" while professing agnosticism about the target of the remedy.
¶33 We used to know this. "An individual is personally responsible for his own tortious conduct." Oxmans' Erwin Meat Co. v. Blacketer, 86 Wis. 2d 683, 692, 273 N.W.2d 285 (1979). That is to say, the injured person has a remedy against the tortfeasor. We have recognized this as a basic proposition as recently as 2001: "It is a basic principle of law, as well as common sense, that one is typically liable only for his or her own acts, not the acts of others." Lewis v. Physicians Ins. Co. of Wisconsin, 2001 WI 60, ¶11, 243 Wis. 2d 648, 627 N.W.2d 484 (footnote omitted). For what is a tortfeasor liable? Damages, of course: "Tort law has generally been viewed as serving three broad social purposes: (1) as a matter of justice, tort law shifts the losses caused by a personal injury to the one at fault ...." CLL Assocs. Ltd. P'ship v. Arrowhead Pac. Corp., 174 Wis. 2d 604, 610, 497 N.W.2d 115 (1993) (emphasis added). The tortfeasor's responsibility for the damages he causes is so basic that over a century ago Justice Oliver Wendell Holmes thought we were all agreed on this proposition. "I assume that common-sense is opposed to making one man pay for another man's wrong, unless he actually has brought the wrong to pass according to the ordinary canons of legal responsibility." Oliver Wendell Holmes Jr., Agency, 5 Harv. L. Rev. 1, 14 (1891).
¶34 Although we used to know this, we have apparently forgotten. So now we say that "the Contractors could be 100 percent liable for wrongful conduct but ... Rural Mutual could be responsible for paying damages to Herman for property loss." Majority op., *434 ¶15.[1] What would Justice Holmes say about this? He would say "I *190 assume that common-sense is opposed to making [Rural] pay for [the Contractors'] wrong, unless [Rural] actually has brought the wrong to pass according to the ordinary canons of legal responsibility." Holmes, supra at 14. We used to say the same thing. See Oxmans' Erwin Meat Co., 86 Wis. 2d at 692, 273 N.W.2d 285 ; CLL Assocs. Ltd. P'ship, 174 Wis. 2d at 610, 497 N.W.2d 115.
¶35 The court's second through fourth errors all fluoresce in this single sentence: "Responsibility for payment of damages, the remedy for tort liability, has shifted from the Contractors to Rural Mutual." Majority op., ¶15. The court's second error was conflating casualty and CGL insurance policies. CGL policies insure against, inter alia, the insured's tort liability. Casualty policies, generally speaking, pay for loss without respect to anyone's tort liability. So when the court casually says the responsibility to pay for Herman's losses "shifted" from the Contractors to Rural, it means that a casualty insurer, instead of a CGL insurer, was responsible for paying for the loss. This is significant because a casualty insurer does not promise to pay for someone's torts; it promises to pay for property loss. So payments made pursuant to Rural's policy have nothing to do with tort liability. The court's error on this point feeds directly into its third error-the failure to distinguish between tort and contract liability.
*435 ¶36 To accurately determine whether the subrogation clause limited tort liability, we must account for the nature of the obligations that brought $ 100,000 into Herman's hands. Rural paid $ 80,000 to Herman. But it did not do so because it committed a tort against Herman. It did so because it issued a casualty insurance policy in which it promised to pay Herman for certain property losses. In other words, Rural was liable to Herman in contract, not tort. The Contractors, on the other hand, paid $ 20,000 based on their tort liability to Herman. So Herman received $ 80,000 based on contract liability and $ 20,000 based on tort liability. Therefore, by "shifting" to Rural the Contractor's responsibility to pay Herman for the damage it caused, the subrogation clause converted $ 80,000 of tort liability into contract liability. So the court's statement that "[t]he Contractors could therefore be 100 percent liable for wrongful conduct but, based on the subrogation waiver expressly allowed by Rural Mutual's policy, Rural Mutual could be responsible for paying damages to Herman for property loss" cannot possibly be true. Majority op., ¶15. The "shift" made the Contractors only 20 percent liable for their tort.
¶37 The court says this conclusion is a result of my mistaken equation of "tort liability" and "damages": "The dissent improperly equates collection of damages with liability and asserts that if Herman cannot collect all of its damages from the Contractors, then the Contractors' liability is limited."[2] Id. But I *436 made no such equation. All I have done is repeat the age-old understanding that there is a necessary and inextricable link between tort liability and damages. It is necessary and inextricable because "damages" are part of the very definition of a tort. "Tort claims comprise the familiar elements of duty, breach, causation, and damage." Springer v. Nohl Elec. Prod. Corp., 2018 WI 48, ¶36, 381 Wis. 2d 438, 912 N.W.2d 1 ; see also *191 United States v. Burke, 504 U.S. 229, 234, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992) ("A 'tort' has been defined broadly as a 'civil wrong, other than breach of contract, for which the court will provide a remedy in the form of an action for damages.' ") (quoted source omitted); Anderson v. Green Bay & W.R.R., 99 Wis. 2d 514, 516, 299 N.W.2d 615 (Ct. App. 1980) ("Before a cause of action for negligence can be successfully alleged, there must exist a duty of care on the part of the defendant, a breach of that duty, a causal connection between the conduct and the injury, and an actual loss or damage as a result of the injury.") (footnote omitted); and Coffey v. City of Milwaukee, 74 Wis. 2d 526, 531, 247 N.W.2d 132 (1976) ("In order to constitute a cause of action for negligence there must exist: (1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury.").
¶38 So there can be no tort liability without damages. And as the court's own definition says, to be liable for a tort means to owe a "legal obligation or responsibility" to the injured party. What is the nature of that "obligation or responsibility"? To pay damages. And if the person is relieved of the responsibility for some of those damages, it necessarily follows that his tort liability has been, in the words of the statute, *437 "limited."[3] And this has nothing to do with Herman's collection of damages; it relates entirely to the tortfeasor's liability for them, which leads to the court's fourth error.
¶39 The court's analysis is inaccurate because the provisions of Wis. Stat. § 895.447 are directed at the Contractors and their liability, whereas the court is focused on Herman and its wholeness. The statute does not prohibit contract clauses that prevent a tort victim from being made whole. It prohibits contract provisions that limit or eliminate the tortfeasor's liability. The court sees no difference between the two, which is why it can say "the remedy that may be obtained as a result of the Contractors' civil wrong is not limited because Herman may still recover damages that are not covered by its policy with Rural Mutual." Majority op., ¶16. Of course the Contractors' tort *438 liability to Herman is limited-the subrogation clause made it responsible for only 20 percent of the damage it caused. That is the statute's focus, not Herman's full recovery. Yes, Herman can turn to its own casualty insurer to obtain a contract-based recovery for its loss. But the statute has nothing to say about that. The statute says the construction contract may not limit the Contractors' tort-based liability to Herman. By "shifting" responsibility for its tort liability to Herman's casualty insurer, the subrogation *192 clause quite obviously limited the Contractors' tort-based liability to Herman.
¶40 Finally, there is this. The court does not explain what Wis. Stat. § 895.447 actually does. Presumably, the court would agree that the statute must prohibit some type of contractual provision that operates against one of the four elements of a tort (duty, breach, causation, damage). It concludes today that the statute does not refer to provisions that reduce the tortfeasor's legal obligation to pay damages to the victim. But it says nothing about which tort element the statute does immunize against contractual revision. For all of these reasons, I respectfully dissent.
¶41 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

The phrase I elided from my quote of the court's opinion was this: "based on the subrogation waiver expressly allowed by Rural Mutual's policy ...." Majority op., ¶15. The efficacy of that waiver depends on the enforceability of the subrogation waiver. If Wis. Stat. § 895.447 invalidates the subrogation waiver, then the fact that the policy allows for such a waiver is entirely irrelevant.

This statement is actually a little ironic because it is the court's focus on Herman's ability to collect rather than the Contractor's liability to pay that forms one of its fundamental errors. See infra, ¶14. My analysis has nothing to do with anyone's ability to collect anything. It is entirely about the tortfeasor's legal obligation to pay.

Neither Gerdmann v. United States Fire Ins. Co., 119 Wis. 2d 367, 350 N.W.2d 730 (Ct. App. 1984), nor Dykstra v. Arthur G. McKee & Co., 100 Wis. 2d 120, 301 N.W.2d 201 (1981), support the majority's position. Nor are they inconsistent with mine. Both the Gerdmann and Dykstra courts addressed indemnity agreements, not subrogation waivers. In an indemnity agreement, one contracting party stands in relation to the other as an insurer of tort liability, as does an insurer who issues a CGL policy. A tortfeasor with a CGL policy is still entirely liable to the injured party for damages; the insurance policy simply makes a contracted-for pool of resources available to satisfy the judgment. An indemnity agreement performs largely the same function-that is, it does not shift liability, it just makes someone else's resources available to satisfy the judgment. We know Wis. Stat. § 895.447 does not forbid insurance for tort liability because the statute says so: "This section does not apply to any insurance contract." § 895.447(2). On the other hand, a subrogation waiver is not an agreement to act as the tortfeasor's liability insurer. It simply eliminates part of the tortfeasor's legal responsibility to pay damages to the injured party.