FACTORY MUTUAL INSURANCE COMPANY,
Plaintiff-Appellant,

v.

CITIZENS INSURANCE COMPANY OF AMERICA,
Defendant-Respondent.

Court of Appeals

*No. 2005AP872. Submitted on briefs October 14, 2005.
—Decided December 14, 2005.*

2006 WI App 16

(Also reported in 709 N.W.2d 82.)

731

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Daniel A. MacDonald* of *Mohs, MacDonald, Widder & Paradise*, Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Heather L. Nelson* of *Law Offices of Loretta M. Griffin*, Chicago, Illinois.

Before Snyder, P.J., Brown and Anderson, JJ.

¶ 1. SNYDER, P.J. Factory Mutual Insurance Company appeals from an order granting summary

judgment in favor of Citizens Insurance Company of America. Factory Mutual contends that the circuit court erred in holding that the contractual waiver of subrogation agreed upon by the parties' policyholders is enforceable under the circumstances presented here; moreover, Factory Mutual contends that public policy dictates a different conclusion than that reached by the circuit court. We disagree and affirm the order of the circuit court.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2.   The parties submitted stipulated facts and supplementary affidavits in support of their competing motions for summary judgment. The undisputed facts are as follows. In June 2001, International Truck and Engine Corporation and CSI Industrial Systems Corporation entered into a contract whereby CSI would participate in the renovation of an existing molding line system at International's manufacturing facility. The contract required both parties to carry comprehensive general liability insurance, along with all risk property damage and other coverage. The contract further directed that:

> All insurance policies shall name the other party to this Contract and its successors and assigns as additional insured. Such insurance shall be primary to any insurance otherwise owned by either party or its successors and assigns.
>
> . . . .
>
> Each party shall cause its insurance underwriters to waive their rights of subrogation against the other party and its respective contractors and subcontractors.

¶ 3. The contract also contained a severability clause, which stated:

> Should any part of this Contract be declared invalid by a court of law or arbitration, such decision shall not affect the validity of any remaining portion, which shall remain in full force and effect as if the invalid portion were never a part of this Contract when it was executed. Should the severance of any such part of this Contract materially affect any other rights or obligations of the Parties hereunder, the Parties will negotiate in good faith to amend this Contract in a mutually satisfactory manner.

¶ 4. In January 2002, while CSI was still performing work at International, a fire broke out on the premises. Neither party disputes that the fire originated while two workers, working on behalf of CSI, were welding an air scrubber unit. The fire spread from the air scrubber to various other places in the International facility, damaging the molding line system as well as surrounding equipment and the building itself.

¶ 5. At the time of the fire, Citizens was CSI's general liability insurer and had also issued installation floater coverage to CSI. The Citizens policy did not list International on its schedule of locations, additional interest declaration pages, or as a loss payee. The installation floater provided coverage in the amount of $500,000 for "any one installation site" and contained an eighty percent coinsurance provision.

¶ 6. Following the fire, CSI filed a first-party claim with Citizens for the sum of $176,828.26. Using the coinsurance calculation dictated by the floater coverage, Citizens paid CSI approximately $9900, plus costs for debris removal. Citizens never made any payments directly to International.

¶ 7. As of January 10, 2002, the date of the fire, International had paid CSI all but approximately $716,000 on the $14,393,903 contract between the parties. CSI walked off the job permanently on or about June 7, 2002. As a result, International paid over $1,400,000 in mechanic's liens filed by CSI contractors, along with the costs of replacing or repairing equipment lost or damaged in the fire. International estimates that it paid in excess of an additional $4,300,000 than it would have paid CSI under the terms of the contract.

¶ 8. International's buildings and property were insured against loss or damage by Factory Mutual. As a result of the fire, International submitted a first-party claim to Factory Mutual for $401,408.91. Factory Mutual paid $301,408.91 and International assumed liability for its deductible of $100,000. The Factory Mutual policy contained a subrogation clause that read in relevant part:

> The Insured is required to cooperate in any subrogation proceedings. The Company [Factory Mutual] may require from the Insured an assignment or other transfer of all rights of recovery against any party for loss to the extent of the Company's payment.
>
> The Company will not acquire any rights of recovery that the Insured has expressly waived prior to a loss, nor will such waiver affect the Insured's rights under this Policy.

¶ 9. Factory Mutual and International brought suit against Citizens, CSI's insurer, alleging negligence on the part of CSI.[1] International's claim was settled and dismissed on August 10, 2004. Subsequently, Citi-

---

[1] Wisconsin's direct action statute provides that insurance companies may be sued directly in actions "for damages caused by negligence." Wis. Stat. § 803.04(2)(a) (2003–04).

zens and Factory Mutual filed cross-motions for summary judgment. Following a motion hearing, the circuit court granted summary judgment in favor of Citizens. Factory Mutual appeals.

## DISCUSSION

¶ 10. We review summary judgment de novo, applying the same method as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is appropriate when there is no material factual dispute and the moving party is entitled to judgment as a matter of law. *Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 296, 349 N.W.2d 733 (Ct. App. 1984). Summary judgment methodology is well established and need not be repeated here. *See, e.g., Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751. Furthermore, the interpretation of a contract is a question of law that this court reviews de novo. *Deminsky v. Arlington Plastics Mach.*, 2003 WI 15, ¶ 15, 259 Wis. 2d 587, 657 N.W.2d 411. The issue of whether coverage exists is a question of law. *Richland Valley Prods., Inc. v. St. Paul Fire & Cas. Co.*, 201 Wis. 2d 161, 164, 548 N.W.2d 127 (Ct. App. 1996).

¶ 11. Two preliminary considerations can be quickly addressed. First, there is no dispute that a party to a contract may waive subrogation explicitly in writing. *See Jindra v. Diederich Flooring*, 181 Wis. 2d 579, 596, 511 N.W.2d 855 (1994). Second, Factory Mutual's policy language does not preserve "any rights of recovery" which are "expressly waived" by an insured prior to a loss; therefore, International had the ability to waive

736

subrogation in the contract with CSI. *Cf. Kulekowskis v. Bankers Life & Cas. Co.*, 209 Wis. 2d 324, 333, 563 N.W.2d 533 (Ct. App. 1997) (citation omitted) (a policy that "functionally recites" the preservation of subrogation rights will prevail over subrogation exclusion language in a conflicting contract). As a result, Factory Mutual must demonstrate that it is otherwise entitled to assert its subrogation claim. A party seeking to apply subrogation has the burden of proving the right to subrogation. *Jindra*, 181 Wis. 2d at 595.

¶ 12.    We turn then to Factory Mutual's argument that Citizens cannot enforce the subrogation waiver because CSI materially breached the contract when it (1) failed to obtain the required insurance coverages and (2) walked off the job prior to completion of the project. Factory Mutual directs us to *Ranes v. American Family Mutual Insurance Co.*, 219 Wis. 2d 49, 57, 580 N.W.2d 197 (1998), for the proposition that "[u]nder Wisconsin common law, a party to a contract is obligated to perform in accordance with the contract terms unless the other party's breach is material."[2] Factory Mutual's argument presupposes a material breach of contract by CSI. It directs us to *Ranes* for the proposition that a breach is material when it destroys "the essential object of the agreement." *See id.* Factory Mutual asserts, among other things, that risk allocation

---

[2] Factory Mutual also argues that the severability clause of the contract should not be invoked to preserve the subrogation waiver. Factory Mutual explains, "Since the Contract was materially breached by CSI, neither CSI nor a party who 'stands in the shoes' of CSI ought to be able to enforce any term or condition of the Contract, after the breach, which of course, includes the subrogation term." The severability question will only arise if any part of the contract is declared invalid. No such declaration has yet been pursued or obtained.

was a principal goal of the contract and "CSI's failure to have adequate all risk insurance was material because it violated the risk allocation plan between the parties."

¶ 13. Factory Mutual relies on *Liberty Mutual Insurance Co. v. Perfect Knowledge, Inc.*, 752 N.Y.S.2d 677 (App. Div. 2002), for support. There, Perfect Knowledge hired a contractor to install a new air conditioning unit and, during the installation, a fire broke out due to a contractor's negligence. *Id.* at 678. Liberty Mutual insured the owner of the building where Perfect Knowledge was a tenant. *Id.* Under the terms of its lease, Perfect Knowledge was to carry $3,000,000 in liability coverage and any contractors it hired were to carry liability coverage. *Id.* at 678–79. The lease also included a subrogation waiver. *Id.* at 678. Perfect Knowledge violated the insurance coverage provisions of the lease. *Id.* at 678–79. With regard to enforceability of the subrogation waiver, the court there concluded:

> Such an agreement is necessarily premised on the procurement of insurance by the parties. Here, however, Perfect Knowledge breached certain provisions of the lease with respect to the procurement of insurance . . . . Without the procurement of insurance, the shifting envisioned under the agreement could not take place, and the agreement was frustrated. Therefore, Perfect Knowledge is not entitled to enforcement of the waiver provisions of the lease.

*Id.* Factory Mutual asks us to adopt the *Liberty Mutual* court's reasoning.

¶ 14. Factory Mutual also cites to *Continental Casualty Co. v. Homontowski*, 181 Wis. 2d 129, 510 N.W.2d 743 (Ct. App. 1993), for support. Continental insured CFM Building Partnership and the policy included the following provision: "If any person . . . to or for whom we make payment under this insurance has

738

rights to recover damages from another, those rights are transferred to us. That person . . . must do nothing after 'loss' to impair [our rights]." *Id.* at 131. CFM hired a salvage company to perform demolition work in the CFM building and entered into a contract that included a waiver of subrogation. *Id.* at 131–32. During the course of the demolition, the salvage company's negligence caused a fire that damaged CFM's property. *Id.* at 132. Continental sued the salvage company, arguing that the subrogation waiver was unenforceable because such a waiver without the knowledge and consent of the insurer is void as a matter of law. *Id.* at 134. We concluded that Continental's policy did not prevent CFM from waiving its subrogation rights *prior to the loss,* and therefore Continental had no right to pursue recovery from the salvage company. *Id.* at 135.

¶ 15.　Factory Mutual relies on *Continental* for the proposition that an insurer can pursue a subrogation claim against a tortfeasor if its insured has the right to recover against the tortfeasor. *See id.* Here, Factory Mutual asserts, International has the right to recover against CSI because it is no longer bound by the terms of the materially breached contract; therefore, Factory Mutual has the right to pursue CSI or Citizens.

¶ 16.　Citizens argues that Factory Mutual's reliance on both *Liberty Mutual* and *Continental* is misplaced. In *Liberty Mutual,* the fundamental distinction is a procedural one:　Liberty Mutual asserted its cause of action in negligence *and breach of contract* against the tortfeasor. *See Liberty Mutual,* 299 A.D.2d at 525. We agree that this distinguishes *Liberty Mutual* from the current case and defeats Factory Mutual's attempted analogy. Here, no breach of contract action has ever been filed; no breach, material or otherwise, has

been established. As the circuit court observed, there may be a "breach of contract action here regarding the allocation of risk, but it's not in this lawsuit." We agree.

■

¶ 17.    Citizens also emphasizes that the *Continental* court enforced the insured's contractual waiver of subrogation. Citizens points to Factory Mutual's own policy language, which states that Factory Mutual "will not acquire any rights of recovery that the Insured has expressly waived *prior to a loss* . . . ." (Emphasis added.) Here, that is precisely what happened. International waived subrogation prior to the loss caused by the January 10, 2002 fire. As we concluded in *Continental*, we have no right to relieve an insurer from the consequences of its own disadvantageous terms. *See Continental*, 181 Wis. 2d at 135.

¶ 18.    In the alternative, Factory Mutual argues that public policy considerations support its right to bring a subrogation claim against Citizens. It summarizes:    "If the Court bars subrogation, then Factory Mutual will absorb the loss [to International's property] under its all risk property coverage issued to International . . . . If the Court allows subrogation to proceed, then Citizens will absorb the loss under its Commercial General Liability Policy issued to CSI . . . ." Factory Mutual continues, "So far as the two insurance companies are concerned, neither insurance company has a more or less equitable position than the other." Further, Factory Mutual concedes:

> Factory Mutual was not harmed by CSI's failure to have adequate insurance to cover the fire loss because Factory Mutual did not pay for the loss of CSI's equipment. It did not pay this loss because International did not have an insurable interest in such equipment, or bear the risk of loss for such equipment. Factory Mutual also

was not harmed by CSI ultimately abandoning the Contract, since that was not a covered event.

However, Factory Mutual contends that the equities between International and CSI must be examined because each insurer "stands in the shoes" of its insured. In an attempt to demonstrate the inequities, Factory Mutual emphasizes that "CSI's abandonment of the project cost International $4,300,000 more than it would have paid CSI, had CSI fully performed the Contract."

¶ 19.   We reject Factory Mutual's assessment of the equities for three reasons. First, the correct statement of the law is that the subrogee stands in the shoes of its subrogor. *Wilmot v. Racine County*, 136 Wis. 2d 57, 63, 400 N.W.2d 917 (1987). This relationship is not synonymous with every insurer-insured relationship; moreover, International waived subrogation in the contract with CSI. Second, Factory Mutual's reference to the $4,300,000 cost to International is irrelevant to the subrogation recovery of approximately $301,400 it is pursuing against Citizens. We are not persuaded by the inflated characterization of damages in Factory Mutual's public policy rhetoric. Finally, Factory Mutual provides no legal authority for its distribution of the equities among the parties and nonparties to this lawsuit. An assertion that is made without citation to legal authority need not be addressed. *Hoffman v. Economy Preferred Ins. Co.*, 2000 WI App 22, ¶ 9, 232 Wis. 2d 53, 606 N.W.2d 590 (Ct. App. 1999).

## CONCLUSION

¶ 20.   We conclude that the subrogation waiver between International and CSI is enforceable. The

741

waiver precludes Factory Mutual from pursuing Citizens or CSI for subrogation of amounts paid to International for property damage caused by CSI's alleged negligence. We further conclude that Factory Mutual has not demonstrated any public policy requiring us to distribute the loss among the parties and nonparties to this action. Here, two sophisticated commercial entities, International and CSI, negotiated the allocation of risk. We take no position on whether CSI materially breached the contract and, if so, what impact that has on the subrogation waiver because no breach of contract claim has been pled in this case. Accordingly, we affirm the circuit court's order granting summary judgment to Citizens.

*By the Court.*—Order affirmed.