# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP001837 |
| COMPLETE TITLE: | Rural Mutual Insurance Company,<br>　　　　Plaintiff-Appellant-Petitioner,<br>　　v.<br>Lester Buildings, LLC and The Phoenix Insurance Company,<br>　　　　Defendants-Third-Party<br>　　　　Plaintiffs-Respondents,<br>West Bend Mutual Insurance Company,<br>　　　　Defendant-Respondent,<br>Jim Herman, Inc.,<br>　　　　Defendant-Co-Appellant,<br>　　v.<br>Van Wyks, Inc.,<br>　　　　Third-Party Defendant-Respondent. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 382 Wis. 2d 269,915 N.W.2d 729
(2018 – unpublished)

| | |
|---|---|
| OPINION FILED: | June 18, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 20, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Dane |
| JUDGE: | Maryann Sumi & Valerie Bailey-Rihn |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | KELLY, J. dissents, joined by A.W. BRADLEY, J. (opinion filed). |
| NOT PARTICIPATING: | ABRAHAMSON, J. did not participate, ZIEGLER, J. withdrew from participation. |

ATTORNEYS:

For the plaintiff-appellant-petitioner, there were briefs filed by *Monte E. Weiss*, *Charles W. Kramer*, and *Weiss Law Offices S.C.*, Mequon. There was oral argument by *Monte E. Weiss*.

For the defendant-third-party-plaintiff-respondent, there was a brief filed by *Kevin A. Christensen*, *Patricia A. Stone*,

and *Wilson Elser Moskowitz Edelman & Dicker, LLP*, Milwaukee. There was oral argument by *Kevin A. Christensen*.

For the third-party-defendant-respondent, there was a brief filed by *Eugene M. LaFlamme*, *Esq.*, *Michael A. Snider*, *Esq.*, and *McCoy Leavitt Laskey LLC,* Waukesha. There was oral argument by *Eugene M. LaFlamme*.

For the defendant-respondent, there was a brief filed by *Jeffrey Leavell*, *Danielle N. Rousset*, and *Jeffrey Leavell, S.C.,* Racine. There was oral argument by *Jeffrey Leavell*.

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No.  2016AP1837
(L.C. No.  2014CV1354)

STATE OF WISCONSIN                :    IN SUPREME COURT

Rural Mutual Insurance Company,

       Plaintiff-Appellant-Petitioner,

   v.

Lester Buildings, LLC and The Phoenix Insurance Company,

       Defendants-Third-Party
       Plaintiffs-Respondents,

West Bend Mutual Insurance Company,

       Defendant-Respondent,

Jim Herman, Inc.,

       Defendant-Co-Appellant,

   v.

Van Wyks, Inc.,

       Third-Party Defendant-Respondent.

**FILED**

**JUN 18, 2019**

Sheila T. Reiff
Clerk of Supreme Court

---

     REVIEW of a decision of the Court of Appeals.  *Affirmed.*

     ¶1  REBECCA  FRANK  DALLET,  J.    Rural  Mutual  Insurance Company  seeks  review  of  an  unpublished  per  curiam  decision  of

the court of appeals[1] affirming the circuit court's grant of summary judgment dismissing Rural Mutual's subrogation claims.[2] The circuit court determined that Rural Mutual's claims against Lester Buildings, LLC, Phoenix Insurance Company, Van Wyks, Inc., and West Bend Mutual Insurance Company were barred pursuant to a subrogation waiver contained in a Lester Buildings' contract with Rural Mutual's insured, Jim Herman, Inc. ("Herman"). The circuit court also found that Wis. Stat. § 895.447 did not void that subrogation waiver.[3]

¶2 The court of appeals affirmed the circuit court and dismissed Rural Mutual's claims. However, the court of appeals declined to address whether Wis. Stat. § 895.447 voided the subrogation waiver, reasoning that the argument was insufficiently developed. We granted review as to two issues: Does § 895.447 void the subrogation waiver at issue? And was the subrogation waiver an unenforceable exculpatory contract contrary to public policy?

¶3 We conclude that Wis. Stat. § 895.447 does not void the subrogation waiver in Lester Buildings' contract because the waiver does not limit or eliminate tort liability. We also

---

[1] Rural Mut. Ins. Co. v. Lester Buildings, LLC, No. 2016AP1837, unpublished slip op. (Wis. Ct. App. Apr. 26, 2018).

[2] Judges Maryann Sumi and Valerie Bailey-Rihn of Dane County Circuit Court presided.

[3] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

conclude that the subrogation waiver is not an unenforceable exculpatory contract contrary to public policy. We therefore affirm the court of appeals.

## I.   FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶4 As the court of appeals correctly noted, "[t]he procedural history of this case is lengthy and complicated." Rural Mut. Ins. Co. v. Lester Buildings, LLC, No. 2016AP1837, unpublished slip op., ¶2 (Wis. Ct. App. Apr. 26, 2018). In 2009, Herman entered into a contract with Lester Buildings for the design and construction of a barn on its property. The contract included the following language:

> Both parties waive all rights against each other and any of their respective contractors, subcontractors and suppliers of any tier and any design professional engaged with respect to the Project, for recovery of any damages caused by casualty or other perils to the extent covered by property insurance applicable to the Work or the Project, except such rights as they have to the proceeds of such property insurance and to the extent necessary to recover amounts relating to deductibles of self-insured retentions applicable to insured losses. . . . This waiver of subrogation shall be effective notwithstanding allegations of fault, negligence, or indemnity obligation of any party seeking the benefit or production of such waiver.

¶5 Herman's barn required concrete in several areas, including the foundation, walls, and piers that supported the roof. The specifications for the concrete were provided by Lester Buildings, but Herman entered into a separate contract

3

with Van Wyks in May 2010 to provide the concrete.[4] The barn that Lester Buildings and Van Wyks constructed was covered by Herman's insurance policy with Rural Mutual. In that policy, Rural Mutual explicitly allowed its insured, Herman, to waive its rights without interfering with Rural Mutual's insurance coverage: "You may waive your right of recovery in writing before a loss occurs without voiding the coverage."

¶6 The barn was completed in June 2010. In May 2013, one half of the barn collapsed due to strong winds, killing or causing catastrophic injuries to a large number of Herman's cattle. Rural Mutual asserts that the barn collapsed due to the improper installation of steel rebar cages in the concrete piers supporting the barn's roof. The cages were allegedly installed by Van Wyks several inches below where Lester Buildings' design had called for them to be installed, which led to the column tops cracking from the strong winds.[5] Rural Mutual paid approximately $607,000 to rebuild Herman's barn and approximately $51,000 for the losses related to cattle and other miscellaneous damages.

---

[4] The Van Wyks' contract also contained a waiver of claims, similar to that found in the Lester Buildings' contract, which read: "Both parties waive all rights against each other and any of their respective contractors, subcontractors and suppliers . . . ." Van Wyks' contract is not at issue on appeal.

[5] The parties dispute who is at fault regarding where the rebar cages were ultimately placed.

4

¶7 In 2014, Rural Mutual brought a subrogation action against Lester Buildings and its insurer, Phoenix, alleging that Lester Buildings had breached its contract with Herman and had been negligent in placing the rebar cages lower than where the specifications required. Lester Buildings and Phoenix then filed third-party cross-claims against Van Wyks and its insurer, West Bend, alleging that if Lester Buildings was liable to Rural Mutual, then Van Wyks would be responsible for any damages owed. Rural Mutual filed an amended complaint which included a count against West Bend, pursuant to Wisconsin's direct action statute, Wis. Stat. § 632.24.[6] Lester Buildings also moved to join Herman as a defendant in the case. Lester Buildings and Van Wyks, and their respective insurers (collectively the "Contractors"), filed separate motions for summary judgment against Rural Mutual. The Contractors asserted that the subrogation waiver in the Lester Buildings' contract barred Rural Mutual's claims against all of them.

¶8 The circuit court granted summary judgment to the Contractors on all of Rural Mutual's claims, reasoning that the

---

[6] Wisconsin Stat. § 632.24 reads:

> Any bond or policy of insurance covering liability to others for negligence makes the insurer liable, up to the amounts stated in the bond or policy, to the persons entitled to recover against the insured for the death of any person or for injury to persons or property, irrespective of whether the liability is presently established or is contingent and to become fixed or certain by final judgment against the insured.

5

subrogation waiver was enforceable and precluded Rural Mutual's claims. The circuit court determined that <u>Gerdmann</u> and <u>Dykstra</u> controlled its interpretation of Wis. Stat. § 895.447 and resolved the claims against Rural Mutual. <u>Gerdmann v. United States Fire Ins. Co.</u>, 119 Wis. 2d 367, 350 N.W.2d 730 (Ct. App. 1984); <u>Dykstra v. Arthur G. McKee & Co.</u>, 100 Wis. 2d 120, 301 N.W.2d 201 (1981). In affirming the circuit court's decision, the court of appeals did not address Rural Mutual's argument that § 895.447 barred the subrogation waiver because it found Rural Mutual's argument regarding the specific waiver to be "woefully insufficient." <u>Rural Mut.</u>, No. 2016AP1837, ¶20.[7] Rural Mutual filed a motion to reconsider, which was denied. Rural Mutual then petitioned this court for review.

## II. STANDARD OF REVIEW

¶9 We review a decision on summary judgment using the same methodology as the circuit court. <u>Green Spring Farms v. Kersten</u>, 136 Wis. 2d 304, 314-15, 401 N.W.2d 816 (1987). Summary judgment shall be granted where the record demonstrates

---

[7] However, in a footnote, the court of appeals stated that if it had reached the issue, it would have concluded that Wis. Stat. § 895.447 did not void the subrogation waiver. <u>Rural Mut.</u>, No. 2016AP1837, ¶23 n.6. The court of appeals observed that the subrogation waiver does not limit Herman from recovering against Lester Buildings in all circumstances. <u>Id.</u> Instead, it limits Herman from recovering damages from Lester Buildings that were covered by insurance and limits recovery by the insurer for damages paid under the insurance policy. <u>Id.</u> For example, the court of appeals discerned that if the collapse was not covered by an insurance policy, there would be no limit on Lester Buildings' tort liability. <u>Id.</u>

6

"that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2). The facts related to this issue are not in dispute and therefore only questions of law remain. Statutory interpretation and the interpretation of an insurance policy present questions of law that this court reviews de novo. Mau v. North Dakota Ins. Reserve Fund, 2001 WI 134, ¶¶12, 28, 248 Wis. 2d 1031, 637 N.W.2d 45.

### III. ANALYSIS

¶10 This case involves the validity of a subrogation waiver contained in Lester Buildings' contract with Rural Mutual's insured, Herman. The Contractors argue that Rural Mutual's subrogation claims are entirely precluded by the subrogation waiver in Lester Buildings' contract with Herman. Rural Mutual asserts that Wis. Stat. § 895.447 voids the subrogation waiver. In the alternative, Rural Mutual asserts that the subrogation waiver is an unenforceable exculpatory contract contrary to public policy.[8]

### A. Wisconsin Stat. § 895.447 does not void the subrogation waiver.

¶11 We first interpret Wis. Stat. § 895.447 to determine whether it voids the subrogation waiver. Statutory interpretation begins with the language of the statute and if the meaning is plain, the inquiry ordinarily ends. State ex

---

[8] Rural Mutual concedes that if the subrogation waiver is valid, all of its claims would be extinguished.

rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. "A statute's purpose or scope may be readily apparent from its plain language or its relationship to surrounding or closely-related statutes——that is, from its context or the structure of the statute as a coherent whole." Id., ¶49.

¶12 We begin with an examination of the plain language of Wis. Stat. § 895.447, which reads:

> Any provision to limit or eliminate tort liability as a part of or in connection with any contract, covenant or agreement relating to the construction, alteration, repair or maintenance of a building, structure, or other work related to construction, including any moving, demolition or excavation, is against public policy and void.

(Emphasis added.) Neither § 895.447 nor surrounding statutes define the term "tort liability." "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially defined words or phrases are given their technical or special definitional meaning." Kalal, 271 Wis. 2d 633, ¶45. "Technical terms or legal terms of art appearing in a statute are given their accepted technical or legal definitions . . . ." See Bosco v. LIRC, 2004 WI 77, ¶23, 272 Wis. 2d 586, 681 N.W.2d 157; see also Wis. Stat. § 990.01(1).

¶13 The dispute lies in whether the subrogation waiver here limits or eliminates "tort liability" and is therefore void. Due to the absence of a statutory definition for the legal term "tort liability," we look to Black's Law Dictionary for assistance. A "tort" is defined as a "civil wrong . . . for

which a remedy may be obtained." Tort, Black's Law Dictionary 1717 (10th ed. 2014); see also Curda-Derickson v. Derickson, 2003 WI App 167, ¶17, 266 Wis. 2d 453, 668 N.W.2d 736 (citing to Black's Law Dictionary for the definition of tort). "Liability" is defined as "[t]he quality, state, or condition of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment." Liability, Black's Law Dictionary 1053 (10th ed. 2014). Taken together, "tort liability" is the legal obligation or responsibility to another resulting from a civil wrong or injury for which a remedy may be obtained.[9]

¶14 Rural Mutual selectively reads the words "waive all rights against each other" together with the words "notwithstanding allegations of fault, negligence, or indemnity," in the Lester Buildings' contract and concludes that this language eliminates tort liability in violation of Wis. Stat. § 895.447. The subrogation waiver must be read in its entirety, however, to understand exactly what is being waived: "Both parties waive all rights against each other . . . for recovery of any damages . . . to the extent covered by property insurance . . . . This waiver of subrogation shall be effective

---

[9] The Supreme Court of Michigan recently took a similar approach in defining the term "tort liability" when there was no statutory definition or case law defining the term. See In re Bradley Estate, 835 N.W.2d 545, 555 (Mich. 2013).

9

notwithstanding allegations of fault, negligence, or indemnity obligation of any party . . . ." (Emphasis added.)[10]

¶15 The subrogation waiver does not limit or eliminate the legal responsibility of the Contractors to Herman for the collapse of Herman's barn. The Contractors and any other subcontractors or suppliers who constructed the barn are still liable to Herman for their negligent acts.[11] Instead, the subrogation waiver waives Herman's right to recover damages from the Contractors for their wrongful acts to the extent those damages are covered by a property insurance policy such as the one between Herman and Rural Mutual. Responsibility for payment of damages, the remedy for tort liability, has shifted from the Contractors to Rural Mutual.[12] The dissent improperly equates collection of damages with liability and asserts that if Herman cannot collect all of its damages from the Contractors, then the

---

[10] Contrary to Rural Mutual's assertion, the language "notwithstanding [any] allegations of fault, negligence, or indemnity" does not broaden the subrogation waiver; rather, it is illustrative of the types of claims that may be brought.

[11] The waiver stated that Lester Buildings and Herman "waive all rights against each other and any of their respective contractors, subcontractors and suppliers of any tier" and do so "notwithstanding allegations of fault, negligence . . . ." The waiver therefore unambiguously applies to all of the "contractors, subcontractors and suppliers of any tier." As a contractor to Herman, Van Wyks was included within this provision.

[12] Tort liability, "the legal obligation or responsibility to another resulting from a civil wrong or injury for which a remedy may be obtained," does not specify from whom the remedy may be obtained.

Contractors' liability is limited.[13]   However, the Contractors could be 100 percent liable for wrongful conduct but, based on the subrogation waiver expressly allowed by Rural Mutual's policy, Rural Mutual could be responsible for paying damages to Herman for property loss.

¶16  Moreover, the remedy that may be obtained as a result of the Contractors' civil wrong is not limited because Herman may still recover damages that are not covered by its policy with Rural Mutual, including any deductibles applicable to its losses.[14]   In fact, Herman pursued and ultimately resolved its claims against the Contractors for uncovered losses they allegedly caused.[15]

¶17  Lastly, we examine prior case law interpreting Wis. Stat. § 895.447 to corroborate its plain meaning.  See Legue v. City of Racine, 2014 WI 92, ¶61, 357 Wis. 2d 50, 849 N.W.2d 837; Force ex rel. Welcenbach v. American Family Mut. Ins. Co., 2014 WI 82, ¶31, 356 Wis. 2d 582, 850 N.W.2d 866.  Only one case has applied the plain language of Wis. Stat. § 895.447, Gerdmann,

---

[13] The dissent writes:  "[o]f course the Contractors' tort liability to Herman is limited—the subrogation clause made it responsible for only 20 percent of the damage it caused." Dissent, ¶39.

[14] The subrogation waiver provides an exception for rights to the proceeds of the property insurance and, as necessary, to recover amounts relating to deductibles.

[15] Herman was ultimately made whole through a combination of its policy with Rural Mutual and its ability to sue the Contractors for damages not covered by that policy.

119 Wis. 2d 367, and it supports our conclusion regarding the subrogation waiver at issue. In Gerdmann, the court of appeals held that an indemnity clause between Roen, a contractor, and Manitowoc, the property owner, was not void under Wis. Stat. § 895.49, the statutory precursor to § 895.447.[16] Gerdmann, 119 Wis. 2d at 374. The Gerdmann court reasoned that the indemnity agreement at issue "neither limits nor eliminates Manitowoc's tort liability to third parties [Gerdmann]. Rather, it makes Roen the insurer should damages result." Id. The Gerdmann court relied on this court's decision in Dykstra, 100 Wis. 2d 120, which upheld an indemnification agreement executed prior to the codification of the precursor to § 895.447. In a footnote the court stated: "[w]e note in passing, however, that

---

[16] The indemnity agreement in Gerdmann read:

Contractor shall indemnify the Owner and Engineer against and hold the Owner and Engineer harmless from any and all liability for damages on account of injury, including death, to persons, including employees of Contractor, or damage to property resulting from or arising out of or in any way connected with the performance of work under this Contract by Contractor or any Subcontractor. In addition, Contractor shall reimburse Owner for all costs, expenses, and loss incurred by them in consequence of any claims, demands, and causes of action, whether meritorious or not, which may be brought against them and arising out of the operations covered by the Contract. . . . Contractor shall pay any costs, including Attorney's fees, that may be incurred by Owner in enforcing this indemnity. . . .

Gerdmann v. United States Fire Ins. Co., 119 Wis. 2d 367, 374, 350 N.W.2d 730 (Ct. App. 1984).

it does not appear that this statute [§ 895.447] necessarily outlaws indemnity agreements of the kind with which this opinion is concerned." Dykstra, 100 Wis. 2d at 130 n.4. The Gerdmann court characterized this court's observation in Dykstra as "important" because it indicated that this court "did not believe that the statute clearly voids such indemnity agreements." Gerdmann, 119 Wis. 2d at 374. As in Gerdmann, the subrogation waiver neither limits nor eliminates the Contractors' tort liability, it simply makes Rural Mutual the insurer should property damage result. Therefore, we conclude that § 895.447 does not void the subrogation waiver here because it does not limit or eliminate tort liability.

**B. The subrogation waiver does not relieve a party from liability for harm caused by its own negligence and therefore it is not an unenforceable exculpatory contract.**

¶18 Rural Mutual asserts that the subrogation waiver is an unenforceable exculpatory contract that is contrary to public policy. While Rural Mutual did not brief this argument to the court of appeals, we will nonetheless consider it.[17] To the extent that Rural Mutual argues that Wisconsin law prohibits the enforcement of exculpatory contracts for reckless conduct, there is no evidence in the record to establish reckless conduct on

---

[17] See e.g., Hopper v. City of Madison, 79 Wis. 2d 120, 137, 256 N.W.2d 139 (1977) (noting that whether this court will consider an issue not raised before the circuit court "depends upon the facts and circumstances of each case.").

13

the part of the Contractors, and therefore we will not reach that issue.[18]

¶19 In Merten v. Nathan, 108 Wis. 2d 205, 210, 321 N.W.2d 173 (1982), we defined an exculpatory contract as one which "relieve[s] a party from liability for harm caused by his or her own negligence." In its oral ruling in this case, the circuit court held that the subrogation waiver was not an all-encompassing avoidance of liability and therefore did not meet the definition of an exculpatory contract.[19] The circuit court relied upon Rainbow Country Rentals & Retail, Inc. v. Ameritech Publishing, Inc., 2005 WI 153, 286 Wis. 2d 170, 706 N.W.2d 95, where this court held that a contract restricting recoverable damages, but not releasing a party from liability, did not meet the operational definition of an exculpatory contract.

¶20 We agree with the circuit court's conclusion. As detailed above, the subrogation waiver in this case did not exculpate the Contractors from liability, it merely shifted the responsibility for payment of damages. If the Contractors were negligent or otherwise at fault, the subrogation waiver shifted recovery of damages for property loss to Herman's insurer, Rural

---

[18] We decline to answer a question unsupported by the facts of the case or to render an advisory opinion on an issue that is not ripe for adjudication. See Tammi v. Porsche Cars N. Am., Inc., 2009 WI 83, ¶3, 320 Wis. 2d 45, 768 N.W.2d 783.

[19] The circuit court also relied on the equal bargaining positions of the parties; however, we can identify no authority to support the consideration of bargaining positions when deciding if a contract meets the definition of exculpatory.

Mutual, only to the extent covered by Herman's policy with Rural Mutual. Herman could still recover damages not covered by its policy with Rural Mutual from the Contractors, including any deductibles.

¶21 We also observe that the court of appeals rejected a public policy challenge to a contractual subrogation waiver in a similar situation involving sophisticated parties where the waiver was expressly authorized by the insurer in its policy. See Factory Mut. Ins. Co. v. Citizens Ins. Co. of America, 2006 WI App 16, ¶20, 288 Wis. 2d 730, 709 N.W.2d 82. Here, Rural Mutual expressly anticipated and allowed for this outcome, as evidenced by its policy language permitting Herman to "waive [its] right of recovery in writing before a loss occurs without voiding the coverage." Rural Mutual received a benefit, in the form of premium payments, for expressly allowing its insured to allocate risk in this way. We will not rewrite Rural Mutual's policy to exonerate it from a risk that it contemplated and for which it received a premium. See Algrem v. Nowlan, 37 Wis. 2d 70, 79, 154 N.W.2d 217 (1967) ("'when parties to a contract adopt a provision . . . which contains no element of ambiguity, the court has no right, by a process of interpretation to relieve one of them from any disadvantageous terms which [it] has actually made'") (quoted source omitted).

¶22 The subrogation waiver in this case does not immunize the allegedly negligent parties from liability or require the injured party to go uncompensated, and thus it is not an unenforceable exculpatory contract contrary to public policy.

15

IV. CONCLUSION

¶23 We conclude that Wis. Stat. § 895.447 does not void the subrogation waiver in Lester Buildings' contract because the waiver does not limit or eliminate tort liability. We also conclude that the subrogation waiver is not an unenforceable exculpatory contract contrary to public policy. We therefore affirm the court of appeals and uphold the grant of summary judgment.

*By the Court.*—The decision of the court of appeals is affirmed.

¶24 SHIRLEY S. ABRAHAMSON, J., withdrew from participation.

¶25 ANNETTE KINGSLAND ZIEGLER, J., did not participate.

¶26 DANIEL KELLY, J. *(dissenting).* The court's error is really pretty simple. Where the Legislature said that a contract may not limit a tortfeasor's liability, the court heard that a contract may not limit the victim's right to be made whole. These are not the same things. Because the court said they are, I respectfully dissent.

¶27 Demonstrating where the court's analysis stopped tracking Wis. Stat. § 895.447 requires some table-setting. So I'll start with the central parties and some hypothetical numbers. Jim Herman, Inc. ("Herman") hired Lester Buildings, LLC, and others ("the Contractors") to build a barn. The barn failed because of the Contractors' (alleged) negligence, causing Herman significant damages. Rural Mutual Insurance Company ("Rural") paid Herman for most of the damage he suffered, and the Contractors paid the balance. For the sake of simplicity, I'll say the total damages were $100,000, Rural paid $80,000 of that, and because of the contract clause at issue in this case, the Contractors paid $20,000.

¶28 Next we need to know what we mean when we talk about "tort liability." The court provided a workable definition——it is "the legal obligation or responsibility to another resulting from a civil wrong or injury for which a remedy may be obtained." Majority op., ¶13. In this case, therefore, when we speak of tort liability we are speaking of "[the Contractors'] legal obligation or responsibility to [Herman] resulting from a civil wrong or injury for which a remedy may be obtained." Id. That is to say, we look at this from the perspective of what the Contractors owe Herman for their tortious behavior.

1

¶29 Now we are ready to assess the contract's impact on the tort liability involved in this case. Without Rural's insurance payment and the contract's subrogation waiver, the Contractors would be liable to Herman for $100,000. But with the insurance payment and subrogation waiver, the Contractors are liable to Herman for only $20,000. In either scenario, Herman still receives $100,000. The question is whether the latter scenario represents the limitation or elimination of tort liability.

¶30 The court sees no difference in tort liability between these two scenarios. In fact, it says "[t]he subrogation waiver does not limit or eliminate the legal responsibility of the Contractors to Herman for the collapse of Herman's barn. The Contractors and any other subcontractors or suppliers who constructed the barn are still liable to Herman for their negligent acts." Id., ¶15 (footnote omitted). But how can that be true if the duty to pay Herman has decreased from $100,000 to $20,000? The court does not explain, but does give some insight into the nature of its error.

¶31 I think the court's misunderstanding stems from the following four errors: (1) its basic misunderstanding of tort law; (2) its failure to distinguish between casualty insurance policies and commercial general liability ("CGL") insurance policies; (3) its conflation of contract and tort liability; and (4) its shift in focus from liability to wholeness.

¶32 The court's first error goes to the very concept of torts. The raison d'être of tort law is holding tortfeasors responsible for the damages they cause. The court, however,

2

isn't so sure. It says: "Tort liability, 'the legal obligation or responsibility to another resulting from a civil wrong or injury for which a remedy may be obtained,' does not specify from whom the remedy may be obtained." Id., ¶15 n.12. Yes, actually it does. The remedy may be obtained from the tortfeasor. The court's own definition of "tort liability" should have informed it that we really do know the identity of the one against whom a remedy may be had. The "legal obligation" and the "remedy" to which the court refers are reciprocals. The one with the right to a remedy is the one to whom the legal obligation is owed. Inversely, the one with a legal obligation owes it to the one with a remedy. So if a civil wrong gives rise to a legal obligation to someone else, the "someone else" is the person who has the right to pursue the remedy. And that person may pursue the remedy against the one who owes the legal obligation. So the court cannot maintain its definition of "tort liability" while professing agnosticism about the target of the remedy.

¶33 We used to know this. "An individual is personally responsible for his own tortious conduct." Oxmans' Erwin Meat Co. v. Blacketer, 86 Wis. 2d 683, 692, 273 N.W.2d 285 (1979). That is to say, the injured person has a remedy against the tortfeasor. We have recognized this as a basic proposition as recently as 2001: "It is a basic principle of law, as well as common sense, that one is typically liable only for his or her own acts, not the acts of others." Lewis v. Physicians Ins. Co. of Wisconsin, 2001 WI 60, ¶11, 243 Wis. 2d 648, 627 N.W.2d 484 (footnote omitted). For what is a tortfeasor liable? Damages,

3

of course: "Tort law has generally been viewed as serving three broad social purposes: (1) as a matter of justice, tort law shifts the losses caused by a personal injury to the one at fault . . . ." CLL Assocs. Ltd. P'ship v. Arrowhead Pac. Corp., 174 Wis. 2d 604, 610, 497 N.W.2d 115 (1993) (emphasis added). The tortfeasor's responsibility for the damages he causes is so basic that over a century ago Justice Oliver Wendell Holmes thought we were all agreed on this proposition. "I assume that common-sense is opposed to making one man pay for another man's wrong, unless he actually has brought the wrong to pass according to the ordinary canons of legal responsibility." Oliver Wendell Holmes Jr., Agency, 5 Harv. L. Rev. 1, 14 (1891).

¶34 Although we used to know this, we have apparently forgotten. So now we say that "the Contractors could be 100 percent liable for wrongful conduct but . . . Rural Mutual could be responsible for paying damages to Herman for property loss." Majority op., ¶15.[1] What would Justice Holmes say about this? He would say "I assume that common-sense is opposed to making [Rural] pay for [the Contractors'] wrong, unless [Rural] actually has brought the wrong to pass according to the ordinary canons of legal responsibility." Holmes, supra at 14. We used to say the same thing. See Oxmans' Erwin Meat Co., 86 Wis. 2d at 692; CLL Assocs. Ltd. P'ship, 174 Wis. 2d at 610.

_____

[1] The phrase I elided from my quote of the court's opinion was this: "based on the subrogation waiver expressly allowed by Rural Mutual's policy . . . ." Majority op., ¶15. The efficacy of that waiver depends on the enforceability of the subrogation waiver. If Wis. Stat. § 895.447 invalidates the subrogation waiver, then the fact that the policy allows for such a waiver is entirely irrelevant.

4

¶35 The court's second through fourth errors all fluoresce in this single sentence: "Responsibility for payment of damages, the remedy for tort liability, has shifted from the Contractors to Rural Mutual." Majority op., ¶15. The court's second error was conflating casualty and CGL insurance policies. CGL policies insure against, inter alia, the insured's tort liability. Casualty policies, generally speaking, pay for loss without respect to anyone's tort liability. So when the court casually says the responsibility to pay for Herman's losses "shifted" from the Contractors to Rural, it means that a casualty insurer, instead of a CGL insurer, was responsible for paying for the loss. This is significant because a casualty insurer does not promise to pay for someone's torts; it promises to pay for property loss. So payments made pursuant to Rural's policy have nothing to do with tort liability. The court's error on this point feeds directly into its third error——the failure to distinguish between tort and contract liability.

¶36 To accurately determine whether the subrogation clause limited tort liability, we must account for the nature of the obligations that brought $100,000 into Herman's hands. Rural paid $80,000 to Herman. But it did not do so because it committed a tort against Herman. It did so because it issued a casualty insurance policy in which it promised to pay Herman for certain property losses. In other words, Rural was liable to Herman in contract, not tort. The Contractors, on the other hand, paid $20,000 based on their tort liability to Herman. So Herman received $80,000 based on contract liability and $20,000 based on tort liability. Therefore, by "shifting" to Rural the

Contractor's responsibility to pay Herman for the damage it caused, the subrogation clause converted $80,000 of tort liability into contract liability. So the court's statement that "[t]he Contractors could therefore be 100 percent liable for wrongful conduct but, based on the subrogation waiver expressly allowed by Rural Mutual's policy, Rural Mutual could be responsible for paying damages to Herman for property loss" cannot possibly be true. Majority op., ¶15. The "shift" made the Contractors only 20 percent liable for their tort.

¶37 The court says this conclusion is a result of my mistaken equation of "tort liability" and "damages": "The dissent improperly equates collection of damages with liability and asserts that if Herman cannot collect all of its damages from the Contractors, then the Contractors' liability is limited."[2] Id. But I made no such equation. All I have done is repeat the age-old understanding that there is a necessary and inextricable link between tort liability and damages. It is necessary and inextricable because "damages" are part of the very definition of a tort. "Tort claims comprise the familiar elements of duty, breach, causation, and damage." Springer v. Nohl Elec. Prod. Corp., 2018 WI 48, ¶36, 381 Wis. 2d 438, 912 N.W.2d 1; see also United States v. Burke, 504 U.S. 229, 234 (1992) ("A 'tort' has been defined broadly as a 'civil wrong,

---

[2] This statement is actually a little ironic because it is the court's focus on Herman's ability to collect rather than the Contractor's liability to pay that forms one of its fundamental errors. See infra, ¶14. My analysis has nothing to do with anyone's ability to collect anything. It is entirely about the tortfeasor's legal obligation to pay.

other than breach of contract, for which the court will provide a remedy in the form of an action for damages.'") (quoted source omitted); Anderson v. Green Bay & W.R.R., 99 Wis. 2d 514, 516, 299 N.W.2d 615 (Ct. App. 1980) ("Before a cause of action for negligence can be successfully alleged, there must exist a duty of care on the part of the defendant, a breach of that duty, a causal connection between the conduct and the injury, and an actual loss or damage as a result of the injury.") (footnote omitted); and Coffey v. City of Milwaukee, 74 Wis. 2d 526, 531, 247 N.W.2d 132 (1976) ("In order to constitute a cause of action for negligence there must exist:  (1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury.").

¶38 So there can be no tort liability without damages. And as the court's own definition says, to be liable for a tort means to owe a "legal obligation or responsibility" to the injured party.  What is the nature of that "obligation or responsibility"?  To pay damages.  And if the person is relieved of the responsibility for some of those damages, it necessarily follows that his tort liability has been, in the words of the

7

statute, "limited."[3]  And this has nothing to do with Herman's collection of damages; it relates entirely to the tortfeasor's liability for them, which leads to the court's fourth error.

¶39 The court's analysis is inaccurate because the provisions of Wis. Stat. § 895.447 are directed at the Contractors and their liability, whereas the court is focused on Herman and its wholeness.  The statute does not prohibit contract clauses that prevent a tort victim from being made whole.  It prohibits contract provisions that limit or eliminate the tortfeasor's liability.  The court sees no difference between the two, which is why it can say "the remedy that may be obtained as a result of the Contractors' civil wrong is not limited because Herman may still recover damages that are not covered by its policy with Rural Mutual."  Majority op., ¶16.

---

[3] Neither Gerdmann v. United States Fire Ins. Co., 119 Wis. 2d 367, 350 N.W.2d 730 (Ct. App. 1984), nor Dykstra v. Arthur G. McKee & Co., 100 Wis. 2d 120, 301 N.W.2d 201 (1981), support the majority's position.  Nor are they inconsistent with mine.  Both the Gerdmann and Dykstra courts addressed indemnity agreements, not subrogation waivers.  In an indemnity agreement, one contracting party stands in relation to the other as an insurer of tort liability, as does an insurer who issues a CGL policy.  A tortfeasor with a CGL policy is still entirely liable to the injured party for damages; the insurance policy simply makes a contracted-for pool of resources available to satisfy the judgment.  An indemnity agreement performs largely the same function——that is, it does not shift liability, it just makes someone else's resources available to satisfy the judgment.  We know Wis. Stat. § 895.447 does not forbid insurance for tort liability because the statute says so:  "This section does not apply to any insurance contract."  § 895.447(2).  On the other hand, a subrogation waiver is not an agreement to act as the tortfeasor's liability insurer.  It simply eliminates part of the tortfeasor's legal responsibility to pay damages to the injured party.

8

Of course the Contractors' tort liability to Herman is limited——the subrogation clause made it responsible for only 20 percent of the damage it caused. <u>That</u> is the statute's focus, not Herman's full recovery. Yes, Herman can turn to its own casualty insurer to obtain a contract-based recovery for its loss. But the statute has nothing to say about that. The statute says the construction contract may not limit the Contractors' tort-based liability to Herman. By "shifting" responsibility for its tort liability to Herman's casualty insurer, the subrogation clause quite obviously limited the Contractors' tort-based liability to Herman.

¶40 Finally, there is this. The court does not explain what Wis. Stat. § 895.447 actually does. Presumably, the court would agree that the statute must prohibit some type of contractual provision that operates against one of the four elements of a tort (duty, breach, causation, damage). It concludes today that the statute does not refer to provisions that reduce the tortfeasor's legal obligation to pay damages to the victim. But it says nothing about which tort element the statute <u>does</u> immunize against contractual revision. For all of these reasons, I respectfully dissent.

¶41 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

9